**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** Plaintiff, v. **SURESCRIPTS, LLC,** Defendant. | **Case No.: 19-cv-1080 (JDB)** |

**DEFENDANT SURESCRIPTS' RESPONSE TO THE COURT'S MINUTE ORDER**

In response to this Court's question regarding whether the pending petitions for certiorari in *FTC v. Credit Bureau Ctr., LLC*, pet. for cert. pending, No. 19-825 (filed Dec. 19, 2019); *AMG Capital Mgmt., LLC v. FTC*, pet. for cert. pending, No. 19-508 (filed Oct. 18, 2019); and *Publishers Bus. Servs., Inc. v. FTC*, pet. for cert. pending, No. 19-507 (filed Oct. 18, 2019) (the "pending petitions") have any bearing in this case, Surescripts offers three observations.

1. **This case almost certainly would not be here if the FTC had adhered to Section 13(b)'s text and only sought injunctive relief.**

In April 2019, the FTC was concluding its nearly three-year investigation into Surescripts and had informed Surescripts that it would seek both disgorgement and an injunction to change its conduct. Had the FTC only demanded injunctive relief, it is very likely that this litigation would never have commenced. Instead, Surescripts believes that it would have entered into a consent order that governed its subsequent conduct and settled with the FTC. The pending petitions are therefore directly relevant here because if the Supreme Court holds that Section 13(b) does not empower disgorgement, it will greatly increase the prospects of an agreed resolution of this case.

Proceeding without the unlawful overhang that is the FTC's claim to monetary relief would be the right outcome under Section 13(b)'s text. Section 13(b) does not mention monetary relief or any open-ended equitable relief and instead states that "the Commission may seek, and after proper proof, the court may issue, a permanent injunction." 15 U.S.C. § 53(b). Congress's choice of those words is telling because Congress has referred to other forms of equitable relief (specifically or more generically) when it intends to authorize them.[1] In the Dodd-Frank Act,

---

[1] For example, the Employee Retirement Income Security Act (ERISA) authorizes litigants to seek both "to enjoin any act or practice" and "*other appropriate equitable relief.*" 29 U.S.C. § 1132(a)(3) (emphasis added); *see also* Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 3(a), 119 Stat. 4, 6 (codified at 28 U.S.C. § 1712) ("*equitable relief, including* injunctive relief"

1

Congress amended the Commodity Exchange Act, which only authorized "a permanent or temporary injunction," to allow courts to impose "equitable remedies including . . . restitution . . . [and] disgorgement of gains."  Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 744, 124 Stat. 1376, 1735 (2010) (codified at 7 U.S.C. § 13a-1). Congress' decision in Section 13(b) to use more restrictive language, rather than broader language, shows its intent is not to provide disgorgement authority here.  *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 99 (1991).

### 2. Whatever the Court decides on the question of whether the FTC can seek equitable monetary relief does not resolve whether this is a "proper case."

Although the interpretations of "proper case" and "injunction" are linked by a common statutory framework and legislative history, the two issues are distinct: the "proper case" question goes to whether the substantive legal claim is appropriately pursued in federal court; the "injunction" question goes to what relief the FTC may obtain if it is in the correct forum and ultimately prevails.  As such, even if the Supreme Court were to hold that Section 13(b) authorizes the FTC to seek disgorgement, that does not mean that every disgorgement case under Section 13(b) is a "proper case."  Given that (1) Surescripts' definition of "proper case" would not impact the vast majority of the cases where the FTC (historically at least) sought permanent injunctions to prevent fraud and other "deceptive acts or practices," and (2) the FTC historically has focused its disgorgement claims on those non-novel cases, the range of cases impacted by rulings on both issues would be very small.

---

(emphasis added)); Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22, § 201, 123 Stat. 1632, 1639 (codified at 15 U.S.C. § 1639a) (stating that certain persons "shall not be subject to any injunction, stay, *or other equitable relief*" (emphasis added)); Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110-389, § 315, 122 Stat. 4145, 4167 (codified at 38 U.S.C. § 4323(e)) ("The court shall use . . . *its full equity powers, including* temporary or permanent injunctions, temporary restraining orders, and contempt orders" (emphasis added)).

### 3. The FTC's attempt to seek disgorgement based on a novel antitrust theory underscores the "improper" nature of its case.[2]

It is helpful to briefly retrace the statutory background that is relevant to both the "proper case" and the disgorgement questions. In 1914, Congress established the FTC and granted it authority to declare acts and practices unlawful in Section 5 of the FTC Act. Federal Trade Commission Act, ch. 311, §5(a), 38 Stat. 717, 719 (1914) (codified at 15 U.S.C. § 45). In the handwringing over Section 5's eventual text, Congress weighed *providing fair notice to the business community over what acts and practices were illegal* against, on the other hand, *the benefit of articulating a broad, but ambiguous standard that it would be harder to circumvent*. *See Heater v. FTC*, 503 F.2d 321, 324 (9th Cir. 1974). Congress resolved that debate in favor of fair notice: to "reconcile the Commission's broad power with the need for a specific notice to an individual who must conform his behavior to the terms of the Act, Congress limited the consequences of violation of the Act to a cease and desist order" and it deliberately "withheld from the Commission the power to make a determination which would expose the businessman to liability for acts occurring before the Commission gave the general definition specific meaning in a factual context." *Id*.

In 1973, the Congress augmented the FTC's remedial powers with the addition of Section 13(b), which provided it with the authority at issue here to seek preliminary and permanent

---

[2] There are three statutes that are relevant to understanding the FTC's powers: (1) Section 5 of the FTC Act (1914), which is the substantive law the FTC enforces and which prohibits "unfair acts or practices" (the consumer protection piece) and "unfair methods of competition" (which is the antitrust piece); (2) Section 13(b) (1973), which Congress enacted to address the fact that the FTC lacked remedial powers and which authorizes the FTC to seek preliminary injunctions and, in "proper cases," permanent injunctions; and (3) Section 19 (1975), which provides the FTC with the right to seek monetary relief in consumer protection cases, provided certain elements are met. These three statutes cannot be viewed in isolation but rather tell a cohesive story that is the backdrop for interpreting any question governing the FTC's 13(b) authority.

injunctive relief.  15 U.S.C. § 53(b).  The FTC wanted more and, following Section 13(b)'s enactment, the FTC—much as it once again is trying to do now—sought restitution for a Section 5 violation.  *See Heater*, 503 F.2d at 321.  The Ninth Circuit rejected this claim, holding that the FTC lacked power to seek monetary equitable relief.  *Id* at 327.

The FTC went back to Congress, which enacted Section 19 in response.  Section 19 is *the restitution provision* that the FTC now wants to impute into Section 13(b).  The trouble is that when the FTC asked Congress for remedial authority, Congress only authorized the Commission to seek "such relief as the court finds necessary to redress injury to consumers," and "may include, but shall not be limited to, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting . . . *[such] unfair or deceptive act or practice*."  15 U.S.C. § 57b (emphasis added).  Congress did not provide similar relief for *unfair methods of competition*.

That outcome worked for the FTC by all accounts because the FTC was not in the business of seeking disgorgement in competition cases.  Indeed, in a 2003 Policy Statement, the FTC stated that disgorgement is not a "routine remed[y,]" but rather appropriate only "in exceptional cases" and that it would not seek disgorgement unless three criteria were met, one of which required that the "underlying violation is clear."  Fed. Trade Comm'n, *Policy Statement on Monetary Equitable Remedies in Competition Cases*, 68 Fed. Reg. 45,820, 45,821 (Aug. 4, 2003).  In coming to this conclusion and reminiscent of Section 5's 1914 legislative history, the FTC explained that "*the value of deterrence is reduced when the violator has no reasonable way of knowing in advance that its conduct is placing it in jeopardy of having to pay back all the potential gains.*"  *Id.*  Hence, the disincentive value of disgorgement is greatest "when the violator can determine in advance that its conduct would probably be considered illegal."  *Id.*

*See also* Antitrust Modernization Commission, Report and Recommendations at 285, 288 (April 2007) (endorsing the 2003 Policy Statement).

In 2012, the FTC abandoned its century-old practice of avoiding restitution in competition law cases when it withdrew the 2003 Policy Statement. *Withdrawal of the Commission Policy Statement on Monetary Equitable Remedies in Competition Cases*, 77 Fed. Reg. 47,070 (Aug. 7, 2012). But that created a problem: the FTC had (correctly) long subscribed to Congress's original intent that as an independent expert agency, it should opine on novel questions of law in the first instance through its administrative tribunal. If the FTC wanted disgorgement, it had to abandon that strategy.

So here we are. The reason these two legal questions dovetail so tightly with one another is because they both arise from the FTC's decision beginning in 2014 to leave behind its administrative process and coopt the federal litigation path so that it could seek disgorgement. There was nothing about that decision that was consistent with the text, statutory framework, or legislative intent. And for that reason, where, as here, the FTC pursues a novel case in the first instance in federal court and demands permanent injunctive relief combined with equitable monetary relief, the correct response is to declare it improper.

\* \* \* \* \*

In closing, the Court's order also asks the parties to opine on "any conflict between the FTC and the Department of Justice (Office of the Solicitor General)" in the pending petitions. Surescripts takes no position on any conflict, but merely observes that it is curious that the FTC did not believe the disgorgement issue posed an issue of national importance warranting certiorari when it won, but was quick to trumpet the need for the Court to weigh in when it lost.

Dated: January 10, 2020                    Respectfully submitted,

```
```
Case 1:19-cv-01080-JDB Document 42 Filed 01/10/20 Page 7 of 7

*/s/ Amanda P. Reeves*
Amanda P. Reeves (D.C. Bar 496338)
Allyson M. Maltas (D.C. Bar 494566)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2183
Facsimile: (202) 637-2201
Email: amanda.reeves@lw.com
Email: allyson.maltas@lw.com

Alfred C. Pfeiffer, Jr. (*appearing pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: al.pfeiffer@lw.com

*Attorneys for Defendant Surescripts, LLC*