**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>　　Plaintiff,<br><br>　　　　v.<br><br>**SURESCRIPTS, LLC,**<br><br>　　Defendant. | Civil Action No. 19-1080 (JDB) |

**MEMORANDUM IN SUPPORT OF SURESCRIPTS' MOTION TO AMEND THE COURT'S ORDER DENYING SURESCRIPTS' MOTION TO DISMISS IN ORDER TO CERTIFY IT FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

          **Page**

LEGAL STANDARD ............................................................................................................. 1

I.    THE QUESTION OF THE PROPER INTERPRETATION OF SECTION 13(B) MERITS INTERLOCUTORY REVIEW .................................................................... 3

        A.    The Proper Interpretation of Section 13(b) Is A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion .......... 5

        B.    An Immediate Appeal To Resolve The Proper Interpretation of Section 13(b) May Materially Advance The Ultimate Termination Of This Litigation ................................................................................................................ 10

II.   THE QUESTION WHETHER NON-"PREDATORY" LOW PRICING IS ANTICOMPETITIVE MERITS INTERLOCUTORY REVIEW .................................. 11

        A.    Whether Non-Predatory Low Pricing Is Anticompetitive Is A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion ................................................................................................................ 12

        B.    An Immediate Appeal To Resolve Whether Non-Predatory Low Pricing Can Be Anticompetitive May Materially Advance The Ultimate Termination Of This Litigation ................................................................................ 13

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Geophysical Union v. Texaco Inc.*,
   802 F. Supp. 1 (S.D.N.Y. 1992) ................................................................................................3

*AMG Capital Mgmt., LLC v. FTC*,
   No. 19-508, *pet. for cert. filed* (U.S. Oct. 18, 2019) ................................................................10

*Atl. Ref. Co. v. FTC*,
   381 U.S. 357 (1965) ...................................................................................................................5

*Concord Boat Corp. v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) .................................................................................................12

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
   747 F.3d 145 (2d Cir. 2014) ...............................................................................................10, 14

*Eisai, Inc. v. Sanofi Aventus U.S., LLC*,
   821 F.3d 394 (3d Cir. 2016) .....................................................................................................13

*Ferring B.V. v. Allergan, Inc.*,
   343 F. Supp. 3d 284 (S.D.N.Y. 2018) ........................................................................................3

*In re Frank Santora Equip. Corp.*,
   213 B.R. 420 (E.D.N.Y. 1997) ...................................................................................................7

*FTC v. Abbott Labs.*,
   No. CIV. A. 92-1364, 1992 WL 335442 (D.D.C. Oct. 13, 1992) ..............................................6

*FTC v. AMG Capital Mgmt., LLC*,
   910 F.3d 417 (9th Cir. 2018), *pet. for cert. filed*, No. 19-508 (U.S. Oct. 18,
   2019) ........................................................................................................................................11

*FTC v. Credit Bureau Ctr., LLC*,
   937 F.3d 764 (7th Cir. 2019), *pet. for cert. filed*, No. 19-825 (U.S. Dec. 19,
   2019) ........................................................................................................................................10

*FTC v. Mallett*,
   818 F. Supp. 2d 142 (D.D.C. 2011) ...........................................................................................9

*FTC v. Motion Picture Advert. Serv. Co.*,
   344 U.S. 392 (1953) ...................................................................................................................5

*FTC v. Shire ViroPharma, Inc.*,
   917 F.3d 147 (3d Cir. 2019) ............................................................................................8, 9, 11

*Holloway v. Bristol-Myers Corp.*,
  485 F.2d 986 (D.C. Cir. 1973) ................................................................................5

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990) .................................................................................2, 6

*Liu v. SEC*,
  No. 18-1501 (U.S. argued Mar. 3, 2020) .............................................................10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .............................................................................................11

*McFarlin v. Conseco Servs., LLC*,
  381 F.3d 1251 (11th Cir. 2004) .............................................................................1

*Mei Xing Yu v. Hasaki Rest., Inc.*,
  874 F.3d 94 (2d Cir. 2017) ....................................................................................2

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) ...............................................................................................3

*Nat'l Veterans Legal Servs. Program v. United States*,
  321 F. Supp. 3d 150 (D.D.C. 2018) ...................................................................2, 7

*NicSand v. 3M Co.*,
  507 F.3d 442 (6th Cir. 2007) (en banc) ...............................................................12

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
  555 U.S. 438 (2009) .......................................................................................11, 12

*Publishers Bus. Servs., Inc. v. FTC*,
  No. 19-507, pet. for cert. filed (U.S. Oct. 18, 2019) ............................................10

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) .................................................................................2

*Swint v. Chambers Cty. Comm'n*,
  514 U.S. 35 (1995) .................................................................................................1

*In re Trump*,
  874 F.3d 948 (6th Cir. 2017) .................................................................................2

*United States v. JS & A Grp., Inc.*,
  716 F.2d 451 (7th Cir. 1983) .................................................................................9

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) ...............................................................6, 11, 12, 13

*ZF Meritor LLC v. Eaton Corporation*,
  696 F.3d 254 (3d Cir. 2012) .................................................................................. 12, 13

## STATUTES

15 U.S.C. § 53(b) ............................................................................................................ 3, 8

15 U.S.C. § 53(b)(1)–(2) ...................................................................................................... 7

28 U.S.C. § 1292(b) ................................................................................................... *passim*

## TREATISES

16 Charles Alan Wright & Arthur R. Miller, Federal Practice and
  Procedure § 3930 ............................................................................................................ 2

## OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019) ......................................................................... 8

S. Rep. No. 93-151 (1973) ................................................................................................. 9

This Court's order denying Surescripts' motion to dismiss addressed several difficult questions. Two in particular are outcome-determinative questions of law that will benefit from immediate appellate review: (1) whether the language and structure of Section 13(b) of the FTC Act preclude this suit, and (2) whether Supreme Court precedent forecloses the FTC's argument that Surescripts' low, but not "predatory," pricing is anticompetitive. Because prompt resolution of either of these questions could end this suit and thus entirely avoid the substantial costs—to the parties and the Court—of a complex and fact-intensive antitrust trial, Surescripts moves this Court to certify its order for interlocutory review under 28 U.S.C. § 1292(b).

## LEGAL STANDARD

An interlocutory appeal from a non-final order is appropriate when: (1) the order involves one or more "controlling question[s] of law as to which there is substantial ground for difference of opinion" and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This Court and the Court of Appeals both have a role in providing for interlocutory appeal: this Court is responsible for certifying any order that meets those statutory criteria, after which the Court of Appeals has the discretion to decide whether to hear the appeal now or wait until final judgment. *See id.*; *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995) (discussing Section 1292(b)'s "two-tiered arrangement").

As to the first prong, an order must contain a question "of law"—one that the Court of Appeals could review de novo without resort to the factual record. 28 U.S.C. § 1292(b); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) (explaining that Section 1292(b) primarily concerns questions of "'pure' law, matters the court of appeals 'can decide quickly and cleanly without having to study the record'") (citation omitted). The questions of law must also be "controlling." 28 U.S.C. § 1292(b). "Controlling" legal questions are those whose resolution would serve § 1292(b)'s purpose of avoiding protracted and expensive litigation,

or would "materially affect the outcome of the case." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (citation omitted). Although "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action," "the resolution of an issue need not necessarily terminate an action in order to be 'controlling.'" *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (citations omitted). If "interlocutory reversal [of an order] might save time for the district court, and time and expense for the litigants[,]" such as by narrowing the claims or theories available, the order presents "controlling" questions of law. 16 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE ("WRIGHT & MILLER") § 3930, Westlaw (3d ed. Aug. 2019 update) (footnote omitted).

Additionally, there must be "substantial ground for difference of opinion" as to each controlling question of law. 28 U.S.C. § 1292(b). This standard is generally met if reasonable jurists could disagree as to the answer or if there is persuasive precedent conflicting with the district court's answer. *See, e.g.*, *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution . . . ."); *Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017) ("'[T]here is substantial ground for difference of opinion,' . . . as the differing rulings within this Circuit demonstrate.") (citations omitted); *Nat'l Veterans Legal Servs. Program v. United States*, 321 F. Supp. 3d 150, 155 (D.D.C. 2018) (holding there was substantial ground for difference of opinion when the court's order "made clear that [each side's] arguments are not without merit").

As to the second prong, an interlocutory appeal is appropriate only if "an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). This criterion "is closely tied to the requirement that the order involve a controlling question of law." 16 WRIGHT & MILLER § 3930 (footnote omitted). Generally speaking, courts

deem this requirement met when an immediate appeal "promises to advance the time for trial or to shorten the time required for trial." *See Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 290 (S.D.N.Y. 2018) (citation and internal quotation marks omitted); *see also Am. Geophysical Union v. Texaco Inc.*, 802 F. Supp. 1, 29 (S.D.N.Y. 1992) ("The critical requirement is that [the issue] have the potential for substantially accelerating the disposition of the litigation.") (citation omitted).

Both questions identified by this motion—how to interpret Section 13(b) of the FTC Act and whether low-but-not-predatory pricing can be anticompetitive—meet these requirements. They are pure questions of law, and the parties agree on the only facts that are in any way relevant to them:  (1) this is not the kind of "routine" enforcement case that would indisputably bring this case within the ambit of Section 13(b), and (2) the FTC concedes that Surescripts' low pricing is not predatory.  The Court of Appeals can thus decide these issues without once turning to the record.  And because resolving either question in Surescripts' favor would almost certainly result in dismissal of the FTC's complaint, both questions are controlling.  Meanwhile, conflicting precedent and this Court's skepticism of both parties' arguments show that there is substantial ground for difference of opinion here.  Resolving these questions now rather than later would save time and preserve resources for both the Court and the parties.  As a result, this Court "should not hesitate" to certify its order for interlocutory appeal.  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009).

## ARGUMENT

**I.   THE QUESTION OF THE PROPER INTERPRETATION OF SECTION 13(b) MERITS INTERLOCUTORY REVIEW**

Section 13(b) of the FTC Act provides that the FTC may seek "in proper cases . . . and after proper proof, the court may issue, a permanent injunction."  15 U.S.C. § 53(b).  According to the

3

FTC, this clause gives it unbridled authority to seek a permanent injunction for any and every alleged violation of FTC-enforced law, subject to no limitation but its own discretion.  *See* Op. at 5 (quoting Pl.'s Opp'n at 13) ("the FTC contends that this case is 'proper' because that term just means 'any case in which a permanent injunction would be 'appropriate,' i.e., any case in which a law enforced by the FTC has been violated and equitable remedies are needed to make harmed consumers whole.'").  The FTC therefore claims that a "proper" case is any case it chooses to file. Surescripts instead believes that when Congress enacted the "proper case" standard, it intended for the FTC to seek permanent injunctions in more limited cases of routine fraud or involving straightforward applications of antitrust law.

This Court concluded that the correct interpretation lies somewhere in the middle, but it declined to pin down what "proper cases" actually means.  The Court noted that Surescripts' interpretation deserves "considerable weight," but determined that "it is at least not <u>necessary</u>" to read the "proper cases" proviso as Surescripts suggests.  *See* Op. at 8–9 (emphasis in original). Indeed, this Court added to the interpretative uncertainty surrounding Section 13(b) by suggesting two hypothetical readings that the parties had not discussed in their briefing:  (a) that "'proper cases' are disputes that do not require the exercise of the FTC's scientific expertise"; and (b) that Section 13(b)'s prerequisite requirement that a parallel administrative proceeding be initiated alongside the federal suit—which all agree applies to the section's temporary-injunction provision—might apply to the permanent-injunction provision as well.  *Id*.; Tr. of Mot. Hr'g ("Tr.") at 21:6–22:7; 44:22–46:4.

The uncertainty surrounding this topic is not insignificant.  If Surescripts' interpretation of "proper cases" is correct, the FTC has overstepped its authority and the suit must be dismissed. And if this Court's suggested application of Section 13(b)'s "parallel-proceeding" requirement to

4

the permanent-injunction provision is correct, *see* Tr. at 21:6–22:7, this suit also must be dismissed because the FTC has not initiated a parallel administrative proceeding against Surescripts. The proper interpretation of Section 13(b) is thus a paradigmatic "controlling question of law as to which there is substantial ground for difference of opinion and [for which] an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b).

An unusual facet makes immediate interlocutory review even more attractive in this case because, while it may be dispositive of whether the FTC can seek its relief in this forum, the FTC is not without relief altogether. If the Court of Appeals holds that Section 13(b) does not allow this suit, the FTC presumably would opt to pursue its theories against Surescripts via an administrative proceeding or, without the ability to seek monetary relief, the case may settle. If the FTC proceeds in an administrative process, this would *encourage* the development of competition law by clearing the way for the FTC to exercise its "special expertise" "to provide for the centralized and orderly development of precedent applying the [FTC Act] to a diversity of fact situations." *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 998 (D.C. Cir. 1973). Immediate review would thus not only preserve judicial resources and encourage the efficient resolution of this dispute, it would also tend to honor Congress's design choice to "le[ave] development" of the FTC's regulatory statute to the FTC itself. *Atl. Ref. Co. v. FTC*, 381 U.S. 357, 367 (1965); *see also FTC v. Motion Picture Advert. Serv. Co.*, 344 U.S. 392, 396 (1953) ("The precise impact of a particular practice on the trade is for the Commission, not the courts, to determine.").

    **A.**    **The Proper Interpretation of Section 13(b) Is A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion**

This Court's order confirms that the correct interpretation of Section 13(b) is a pure and controlling question of law for which there is substantial ground for a difference of opinion.

5

The first two of those requirements requires little discussion: the application of Section 13(b) involves *a question of law* and none of the various statutory interpretations put forward in this case involves a disagreement about the facts of this dispute. At most, there is a disagreement between Surescripts and the FTC about how those facts compare to prior case law—with Surescripts arguing this case is far from "routine" and involves novel antitrust theories, *see FTC v. Abbott Labs.*, 1992 WL 335442, at *2 (D.D.C. Oct. 13, 1992), and the FTC arguing this case is similar to *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001). Tr. of Mot. Hr'g at 67:12–16. And, regardless of how one frames the legal dispute, there cannot be a serious dispute as to whether it is *controlling*: a finding that the FTC's case is not "proper" would be dispositive as it would compel a finding the FTC cannot seek a permanent injunction in federal court. *See Klinghoffer*, 921 F.2d at 24.

The Court's decision also brings into focus the extent to which there is a *substantial ground for a difference of opinion* on the gating and murky issue of when and under what circumstances the FTC can seek a permanent injunction in federal court in the first instance without first bringing an administrative case. The difficulty in deciphering the meaning of Section 13(b)'s "proper case" standard is evident in the Court's order. The Court appears to reject both the FTC's broad reading, *see* Op. at 8 ("There is thus considerable weight to Surescripts'[] argument that 'proper cases' is not synonymous with 'all cases,' for such an interpretation would make the phrase superfluous."), and Surescripts' narrower reading, *see id.* at 8–9, but refrains from providing an affirmative definition of the "proper cases." Instead, after considering the various arguments from statutory text, legislative history, and precedent—finding some support for each interpretation as it goes, *see id.* at 8–10—the Court holds that "<u>this</u> case is proper" because "[t]he FTC grounds its legal argument here in Circuit precedent and does not seek to rely on its agency expertise to

6

develop the law." *Id.* at 8 (emphasis in original) (citation omitted). In declining to endorse a reading of Section 13(b), the Court's order demonstrates that there is more than sufficient ground for difference of opinion here—the type of disagreement that often grounds approval of a Section 1292(b) motion. *See, e.g.*, *Nat'l Veterans Legal Servs. Program v. United States*, 321 F. Supp. 3d 150, 155 (D.D.C. 2018) (holding there was substantial ground for difference of opinion when the court's order "made clear that [each side's] arguments are not without merit"); *In re Frank Santora Equip. Corp.*, 213 B.R. 420, 424 (E.D.N.Y. 1997) ("Having reviewed these conflicting [statutory] interpretations, the Court finds that there is a controlling question of law as to which there is substantial ground for difference of opinion[.]").

The area for disagreement only expands once one considers the other potential interpretations of Section 13(b), including an argument the Court raised *sua sponte*. Op. at 8–9; Tr. at 21:6–22:7, 44:22–46:4. At oral argument the Court raised the question of whether Section 13(b)'s parallel-proceeding requirement applies to the permanent-injunction proviso. Tr. at 17:7–22:7, 44:22–50:8. The Court asked each party whether the "provided further" language that introduces the permanent-injunction proviso subordinates that provision to the two prerequisites for federal suit laid out earlier in the section: (1) that the Commission has reason to believe that a violation of FTC-enforced law is occurring or impending, and (2) that parallel FTC administrative proceedings be active or pending. *See* 15 U.S.C. § 53(b)(1)–(2). In response, Surescripts' counsel acknowledged the logic of the Court's interpretation and pointed to support in the legislative history for the idea that "injunctive relief, both preliminary and permanent, is in aid of ongoing internal proceedings." Tr. of Mot. Hr'g at 18:18–19:23, 22:14–16. The FTC, for its part, argued that the *first* prerequisite did apply to the permanent-injunction provision but that the second, the parallel-proceeding requirement, did not. *Id.* at 48:1–9.

7

The Court's suggested interpretation merits further review. The text and structure of Section 13(b) make a plausible case that *both* of the section's prerequisites should apply not only when the FTC seeks temporary injunctions but also when it seeks permanent ones. The section opens with the two prerequisites and explains that when those prerequisites are met, the FTC may bring a federal suit "to enjoin" the challenged behavior. 15 U.S.C. § 53(b). The section next lays out what the FTC must show in order to obtain one particular kind of relief: "a temporary restraining order or a preliminary injunction." *Id.* The section then contains two clauses that are each introduced with the word "provided"—a limiting term that typically means "[o]n the condition or understanding (that)" or "except (that)." *Provided*, BLACK'S LAW DICTIONARY (11th ed. 2019). The first "provided" clause places a condition on *when* relief should be available; any "temporary restraining order or preliminary injunction . . . shall be dissolved" if no administrative complaint is filed within a short window. 15 U.S.C. § 53(b). The second "provided" clause, which is the permanent-injunction clause at issue in this case, arguably places a condition on *what* relief should be available; "in proper cases," a permanent injunction, rather than a temporary one, may be more appropriate. *Id.* Both conditions in the "provided" clauses thus refer back to the main "if/then" structure of the beginning of the section: if both prerequisites are met, then the FTC may seek a temporary, or in some cases a permanent, injunction. If one of the prerequisites is not met—because, for example, FTC administrative proceedings are not active or pending—the FTC may not "bring suit in a district court of the United States to enjoin any such act or practice." *Id.*

This textual analysis finds support in the recent Third Circuit decision, *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019). Reviewing the FTC's request for a permanent injunction to prohibit conduct that had ceased more than five years before the FTC filed suit, the Third Circuit applied the first prerequisite to the permanent-injunction provision and concluded

8

that its "unambiguous" language "does not permit the FTC to bring a claim based on long-past conduct." *Id.* at 156 (citing Section 13(b)). The court explained that the statute's "plain" meaning was reinforced by its legislative history: "When Congress added Section 13(b), the provision was expected to be used for obtaining injunctions against illegal conduct *pending completion of FTC administrative hearings.*" *Id.* (citing S. Rep. No. 93-151, at 30 (1973)) (emphasis added). Because the FTC's failure to satisfy the first prerequisite was enough to affirm the dismissal of its complaint, the Third Circuit didn't address the second. But as this Court suggested during the hearing on Surescripts' motion to dismiss, it is only "logical" to also apply the second prerequisite to the permanent-injunction provision if, as the FTC admits, the first applies. *See* Tr. at 48:1–50:8.

This Court's suggested interpretation would also help close an end-run around the statutory requirements of Section 13(b), which the courts have inadvertently developed. Notwithstanding the plausibility of the Court's suggestion that the parallel-proceeding prerequisite should be read to apply to the permanent-injunction provision of Section 13(b), some other courts have held that the prerequisite extends only to the preliminary-injunction provision. *See, e.g.*, *United States v. JS & A Grp., Inc.*, 716 F.2d 451, 456 (7th Cir. 1983). Meanwhile, "[c]ourts are in agreement that the authority to grant permanent injunctive relief under [Section 13(b)] includes the authority to grant preliminary injunctive relief." *FTC v. Mallett*, 818 F. Supp. 2d 142, 146 (D.D.C. 2011) (citing cases). As a result, in some jurisdictions the FTC can obtain preliminary injunctions under the permanent-injunction provision in situations where the case law prohibits it from doing so under the preliminary-injunction provision. This loophole grows bigger as the category of "proper cases" is made broader; under the FTC's broadest interpretation of that phrase, it would be able to avoid the strictures of the pending-or-active-proceeding requirement in literally every suit it files.

9

This potential for bald-faced evasion of Congress's design counsels all the more strongly in favor of interlocutory review here.

### B. An Immediate Appeal To Resolve The Proper Interpretation of Section 13(b) May Materially Advance The Ultimate Termination Of This Litigation

If the Court of Appeals were to adopt either Surescripts' interpretation of "proper cases" or this Court's suggested reading of Section 13(b) and reverse the denial of Surescripts' motion to dismiss, that decision would terminate this litigation and avoid a novel, fact-intensive, and burdensome antitrust discovery and trial process, which will drain the resources of both the parties and the Court. In the Second Circuit's words, certifying the denial of a motion to dismiss in this context is only "sensibl[e]." *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014) (noting "the time and expense that a potentially needless antitrust trial would take") (citing 28 U.S.C. § 1292(b)).

Additionally, though the parties agree that the motion-to-dismiss stage is not the occasion to determine whether the FTC lacks authority to seek disgorgement, that parallel looming question offsets any real risk about the potential for delay here. As this Court alluded to with its request for briefing on the issue, if interlocutory appeal is denied this suit may nevertheless need to be stayed pending the outcome of the Supreme Court's decision in *Liu v. SEC*, No. 18-1501 (U.S. argued Dec. 16, 2019)—which asks whether disgorgement is available to the SEC—and the three pending cases that raise the same question as to the FTC's disgorgement authority.[1] Three separate Circuits have recently cast doubt on the FTC's authority to seek monetary relief under Section 13(b). *See FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 767 (7th Cir. 2019) (overruling circuit precedent to hold that Section 13(b) does not authorize "restitutionary relief"), *pet. for cert. filed*, No. 19-825

---

[1] *FTC v. Credit Bureau Ctr., LLC*, No. 19-825, *pet. for cert. filed* (U.S. Dec. 19, 2019); *AMG Capital Mgmt., LLC v. FTC*, No. 19-508, *pet. for cert. filed* (U.S. Oct. 18, 2019); and *Publishers Bus. Servs., Inc. v. FTC*, No. 19-507, pet. for cert. filed (U.S. Oct. 18, 2019).

(U.S. Dec. 19, 2019); *FTC v. AMG Capital Mgmt., LLC*, 910 F.3d 417, 426 (9th Cir. 2018) (noting that the argument that Section 13(b) does not authorize monetary relief "has some force, but it is foreclosed by our precedent[]"), *pet. for cert. filed*, No. 19-508 (U.S. Oct. 18, 2019); *Shire ViroPharma*, 917 F.3d at 156 (holding, based on the text of Section 13(b), that the statute is focused on halting "existing or impending conduct," not remedying past harms—a role filled instead by Section 5).  As such, there is good reason to suspect that the Supreme Court decision may likewise curtail the FTC's efforts to obtain disgorgement.  All of this underscores that there are ancillary reasons not to worry about any delay that an interlocutory appeal will bring here.

## II. THE QUESTION WHETHER NON-"PREDATORY" LOW PRICING IS ANTICOMPETITIVE MERITS INTERLOCUTORY REVIEW

Protecting competitive pricing is one of the foremost goals of antitrust law.  *See United States v. Microsoft Corp.*, 253 F.3d 34, 68 (D.C. Cir. 2001) (en banc).  The Supreme Court has accordingly "carefully limited" the circumstances under which low prices can support an antitrust claim:  only allegations that prices are "predatory," *i.e.*, "below an appropriate measure of . . . costs[,]" can support a challenge based on low pricing.  *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 451 (2009) (internal quotation marks and citations omitted).  This Court's holding to the contrary—that Surescripts' optional low pricing plan could give rise to antitrust liability even though the FTC does not allege those prices are below cost—creates straightforward tension with Supreme Court precedent that needs to be resolved by the Court of Appeals.  And, because that tension concerns pleading standards that exist to shepherd judicial resources and prevent "chill[ing of] the very conduct the antitrust laws are designed to protect[]," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986) (citation omitted), the Court of Appeals should be given the option to resolve it now instead of having to wait until those resources have been spent on a lengthy and complicated antitrust trial.

11

A.   **Whether Non-Predatory Low Pricing Is Anticompetitive Is A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion**

Whether low prices can be unlawful when they are not predatory is a pure and controlling question of law. Because the FTC does not dispute that it failed to allege predatory pricing and instead simply argues that Surescripts' low pricing nevertheless constitutes unlawful "exclusive dealing" in violation of the antitrust laws, no reference to the facts of this case is necessary to resolve it. All the Court of Appeals would need to determine is whether the Supreme Court has left the door open for the FTC to argue that Surescripts' low priced contracts can be unlawful even if they the proffered prices are not predatorily low. If the Court of Appeals agrees with Surescripts that the door has been closed, then the FTC's suit would merit dismissal.

As the Court's order reveals, there is substantial ground for differing opinions on this question. As Surescripts explained in its motion to dismiss, optional low pricing is not "exclusive dealing" under that law. Instead low prices such as those offered by Surescripts are only unlawful when they constitute "predatory" pricing. *See Pac. Bell*, 555 U.S. at 451; *NicSand v. 3M Co.*, 507 F.3d 442, 451–52 (6th Cir. 2007) (en banc); *Microsoft*, 253 F.3d. at 67–68; *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1061–62 (8th Cir. 2000). The Court acknowledged the several decisions reaching that conclusion, but it nevertheless opted to follow the Third Circuit's decision in *ZF Meritor LLC v. Eaton Corporation*, 696 F.3d 254, 281 (3d Cir. 2012), for the premise that "[w]here, as here, a dominant supplier enters into *de facto* exclusive dealing arrangements with every customer in the market, other firms may be driven out not because they cannot compete on a price basis, but because they are never given an opportunity to compete." Op. at 14. The Third Circuit's holding in *ZF Meritor* was a marked departure from the predatory pricing law established by the Supreme Court and, as this Court admitted, has not been adopted by the D.C. Circuit. Op. at 14. Accordingly there is a substantial difference of opinion as to whether *ZF Meritor* should be

12

applied in this Circuit. Moreover, and respectfully, there would be a substantial ground for a difference of opinion in whether the Court had even applied that Third Circuit law correctly to this case, given that the Third Circuit requires the application of the predatory pricing price-cost test where, as here, "a firm uses a single-product loyalty discount or rebate to compete with similar products." *Eisai, Inc. v. Sanofi Aventus U.S., LLC*, 821 F.3d 394, 409 (3d Cir. 2016) (citing cases); *see also ZF Meritor*, 696 F.3d at 275 ("When price is the clearly predominant mechanism of exclusion, the price-cost test tells us that, so long as the price is above-cost, the procompetitive justifications for, and the benefits of, lowering prices far outweigh any potential anticompetitive effects.") (citations omitted).

Additionally, there is also substantial ground for a difference of opinion with regard to this Court's application of *Microsoft*, which Surescripts also respectfully submits was in conflict with the Court of Appeals' holding in that case. Consistent with Surescripts' argument, the court in *Microsoft* assessed the offer of low-priced and free products under the predatory pricing test, whereas it assessed true exclusive dealing arrangements under the rule of reason. *See Microsoft*, 253 F.3d at 68–71; *see also* Op. at 13 (acknowledging that the D.C. Circuit applied the predatory pricing standard to Microsoft's offer of free Internet Explorer). *Microsoft* does not stand for the proposition that "Surescripts's alleged practice of charging loyal pharmacies and PBMs less, and paying loyal EHRs greater incentives, do not need to constitute predatory pricing for Surescripts's exclusionary practices to constitute illegal maintenance of a monopoly," as this Court held. Op. at 14.

### B. An Immediate Appeal To Resolve Whether Non-Predatory Low Pricing Can Be Anticompetitive May Materially Advance The Ultimate Termination Of This Litigation

As with the question of the correct interpretation of Section 13(b), if the Court of Appeals were to side with Surescripts' and reverse the denial of its motion to dismiss on this point, that

decision would likely terminate this litigation. Given the time and expense that would be saved by halting a protracted antitrust trial at such an early stage, certification of this Court's order would be "sensibl[e]." *See DPWN Holdings*, 747 F.3d at 150.

In addition, though Surescripts has never engaged in predatory pricing and so is confident that it would be vindicated against any such claim, it acknowledges that the FTC might wish to amend its complaint in order to put that question to the test. That possibility makes quick resolution of this pleading-standard question even more critical. If the FTC's exclusive-dealing claim is really a predatory-pricing claim, better to correct course now than to go all the way down the road of trying the wrong claim, having that trial vacated on appeal, and then starting back at the beginning with the right claim.

## CONCLUSION

For the same reasons that this litigation is not a "proper case" for a permanent injunction under Section 13(b)—because it invokes a novel theory of anticompetitive conduct based on non-predatory low pricing in the jurisprudentially underdeveloped context of a two-sided market in the shadow of recent on-point, yet unclear, Supreme Court precedent—immediate appellate review of the dispositive legal questions it raises would be time well spent before diving into the deep end of a complex, fact-heavy antitrust trial. This Court's order denying Surescripts' motion to dismiss presents "controlling question[s] of law as to which there is substantial ground for difference of opinion," and an "immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Surescripts therefore respectfully requests that this Court amend its order to include the language required by 28 U.S.C. § 1292(b), which will allow Surescripts to petition the D.C. Circuit for interlocutory appeal.

Dated:  March 6, 2020

Respectfully submitted,

/s/ *Amanda P. Reeves* _____
Amanda P. Reeves (D.C. Bar 496338)
Allyson M. Maltas (D.C. Bar 494566)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: 202-637-2183
Facsimile: 202-637-2201
Email: amanda.reeves@lw.com
Email: allyson.maltas@lw.com

Alfred C. Pfeiffer, Jr. (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com

*Attorneys for Defendant Surescripts, LLC*