**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FEDERAL TRADE COMMISSION,**

       **Plaintiff,**

    **v.**

**SURESCRIPTS, LLC,**

       **Defendant.**

**Case No. 19-cv-1080 (JDB)**

**Federal Trade Commission's Opposition to Surescripts's Motion for Interlocutory Appeal**

**Table of Contents**

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD....................................................................................................... 1

ARGUMENT .................................................................................................................... 2

I.      This Court's Conclusion that this Case Is "Proper" Under Section 13(b) of the
        FTC Act Does Not Warrant Interlocutory Review ........................................... 2

        A.      Surescripts fails to establish a substantial ground for difference of opinion
                on this Court's interpretation of Section 13(b) ...................................... 2

        B.      Surescripts fails to establish that immediate appeal of this Court's
                interpretation of Section 13(b) will materially advance the ultimate
                termination of the litigation or conserve resources................................ 8

II.     This Court's Conclusion that the FTC's Complaint States Claims for Unlawful
        Exclusive Dealing Does Not Warrant Interlocutory Review........................... 11

        A.      Surescripts fails to establish a substantial ground for difference of opinion
                on this Court's exclusive dealing ruling ................................................ 11

        B.      Surescripts fails to establish that this Court's exclusive dealing ruling
                involves a controlling question of law .................................................. 14

        C.      Surescripts fails to establish that immediate appeal of this Court's
                exclusive dealing ruling will materially advance the ultimate termination
                of the litigation...................................................................................... 14

        CONCLUSION...................................................................................................... 16

# Table of Authorities

<u>**Cases**</u>

*Air Transport Ass'n of Am., Inc. v. U.S. Dep't of Agric.*,
  317 F. Supp. 3d 385 (D.D.C. 2018) ................................................................ 1

*Alaska v. United States*,
  545 U.S. 75 (2005) ........................................................................................... 7

*Beaty v. Republic of Iraq*,
  No. 03-0215 (JDB), 2007 WL 1169333 (D.D.C. Apr. 19, 2007) ................... 10

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993) ....................................................................................... 11

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) ...................................................................... 12

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992) ....................................................................................... 11

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
  821 F.3d 394 (3d Cir. 2016) .................................................................... 13, 14

*First Am. Corp. v. Al-Nahyan*,
  948 F. Supp. 1107 (D.D.C. 1996) .................................................................. 13

*FTC v H. N. Singer, Inc.*,
  668 F.2d 1107 (9th Cir. 1982) ........................................................................ 5

*FTC v. Abbott Labs.*,
  No. 92-1364, 1992 WL 335442 (D.D.C. Oct. 13, 1992) .................................. 4

*FTC v. Mylan Labs., Inc.*,
  62 F. Supp. 2d 25 (D.D.C. 1999) .................................................................... 4

*FTC v. Shire ViroPharma, Inc.*,
  917 F.3d 147 (3d Cir. 2019) ........................................................................... 5

*FTC v. Shire ViroPharma, Inc.*,
  No. 17-131-RGA, 2018 WL 1401329 (D. Del. Mar. 20, 2018) ....................... 5

*FTC v. U.S. Oil & Gas Corp.*,
  748 F.2d 1431 (11th Cir. 1984) ...................................................................... 5

*FTC v. Va. Homes Mfg. Corp.*,
  509 F. Supp. 51 (D. Md. 1981), *aff'd*, 661 F.2d 920 (4th Cir. 1981) ............. 5

*In re Frank Santora Equip. Corp.*,
  213 B.R. 420 (E.D.N.Y. 1997) ........................................................................ 4

*In re Vitamins Antitrust Litig.*,
  No. 99-197 (TFH), 2000 WL 673936 (D.D.C. Jan. 27, 2000) ................................. 3

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
  233 F. Supp. 2d 16 (D.D.C. 2002) ................................................................. 1, 3, 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................................... 11

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) ................................................................................................. 4

*Nat'l Veterans Legal Servs. Program v. United States*,
  321 F. Supp. 3d 150 (D.D.C. 2018) ......................................................................... 4

*NicSand, Inc. v. 3M Co.*,
  507 F.3d 442 (6th Cir. 2007) (en banc) ................................................................. 12

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018) ........................................................................................... 11

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
  555 U.S. 438 (2009) ........................................................................................... 11, 12

*Palmieri v. United States*,
  No. 12-1403 (JDB), 2015 WL 13679956 (D.D.C. Feb. 12, 2015) ..................... 1, 12

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
  139 S. Ct. 1881 (2019) ............................................................................................. 8

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) .................................................................................... 4

*Republic of Iraq v. Beaty*,
  556 U.S. 848 (2009) ................................................................................................. 7

*Tampa Elec. Co. v. Nashville Coal Co.*,
  365 U.S. 320 (1961) ............................................................................................... 14

*United States* v. *JS & A Group, Inc.*,
  716 F.2d 451 (7th Cir. 1983) .................................................................................... 5

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) (en banc) (per curiam) ................................... 9, 12, 13

*United States v. Nat'l Dynamics Corp.*,
  525 F. Supp. 380 (S.D.N.Y. 1981) ........................................................................... 5

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) ................................................................................... 13

## <u>Statutes</u>

15 U.S.C. § 45(b) ........................................................................................... 7, 8, 10

15 U.S.C. § 45(c) ................................................................................................. 10

15 U.S.C. § 53(b) ................................................................................................ 6, 7

28 U.S.C. § 1292(b) ............................................................................................... 1

## <u>Other Authorities</u>

Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* ............................... 8, 10

**INTRODUCTION**

In its decision denying Surescripts's motion to dismiss, the Court reviewed the statutory text, relevant case law, and factual allegations in the FTC's complaint. The Court then reached (as relevant here) two key conclusions: First, it held that the FTC's case is "proper" under Section 13(b) of the FTC Act. In so holding, the Court deemed the text of the statute to be inconclusive, but explained that "all other factors," including "the clear weight of relevant cases," support a reading of "proper cases" that encompasses this action. Second, the Court held that the FTC's complaint sufficiently alleges unlawful exclusive dealing claims under Section 2 of the Sherman Act. The Court reasoned that "none of the authorities Surescripts cites" support Surescripts's contention that the FTC's case must fail because the FTC does not allege below-cost pricing. Surescripts now seeks the extraordinary step of immediate interlocutory appeal of these two rulings under 28 U.S.C. § 1292(b). But Surescripts cannot satisfy any of the requirements of that statute. The Court should therefore deny Surescripts's motion.

**LEGAL STANDARD**

A district court may certify an order for interlocutory appeal when it "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Surescripts, as the movant, "bears the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Palmieri v. United States*, No. 12-1403 (JDB), 2015 WL 13679956, at *1 (D.D.C. Feb. 12, 2015) (Bates, J.) (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 20 (D.D.C. 2002)). In particular, Surescripts must meet its "burden of establishing all three elements under § 1292(b)." *Air Transport Ass'n of Am., Inc. v. U.S. Dep't of Agric.*, 317 F. Supp. 3d 385, 393 (D.D.C. 2018).

**ARGUMENT**

I.  **This Court's Conclusion that this Case Is "Proper" Under Section 13(b) of the FTC Act Does Not Warrant Interlocutory Review**

    A.  **Surescripts fails to establish a substantial ground for difference of opinion on this Court's interpretation of Section 13(b)**

Surescripts asks this Court to certify the question "whether the language and structure of Section 13(b) of the FTC Act preclude this suit."[1] Surescripts presents two variations on this question. The first, whether the term "proper cases" in Section 13(b)'s permanent injunction proviso means only a case alleging a "routine" or "straightforward" violation, is the argument Surescripts pressed in its motion to dismiss. Mem. 4.[2] The second, whether the FTC can seek a permanent injunction in federal court without also pursuing a parallel administrative case, is based on comments the Court made at oral argument but did not mention in its opinion. Mem. 7-10. Surescripts fails to establish a substantial ground for difference of opinion under § 1292(b) as to either of these questions.

*First*, Surescripts fails to meet its burden on whether the term "proper cases" in Section 13(b) is limited to cases alleging "routine" violations. Surescripts's argument suffers the same fatal flaw as it did in its motion to dismiss: there is no authority supporting Surescripts's view. In the Court's decision denying Surescripts's motion to dismiss, the Court rejected Surescripts's narrow reading of "proper cases" and instead "agree[d] with the clear weight of relevant cases

---

[1] Mem. in Supp. of Surescripts's Mot. to Amend the Court's Order Denying Surescripts's Mot. to Dismiss in Order to Certify It for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) ("Mem.") [ECF No. 56-1] at 1.

[2] *See also* Mem. in Supp. of Surescripts, LLC's Mot. to Dismiss Compl. ("MTD") [ECF No. 32] at 13-29.

. . . that the FTC's complaint sufficiently pleads a 'proper' case for a permanent injunction under Section 13(b)."[3] Contrary to Surescripts's assertion, the Court did not "note[] that Surescripts' interpretation deserves 'considerable weight'" (Mem. 4) or "find[] some support for each [party's] interpretation" as it reviewed the relevant authorities (*id.* at 6). Rather, the Court found "Surescripts's authorities to the contrary are all wanting" (Op. 9) and that "Surescripts's other arguments fare[d] no better" (*id.* at 10). The Court also observed that Surescripts's interpretation would create a "cumbersome threshold test" and an "unwieldly" requirement. *Id.* at 7. Thus, while it believed the text of the statute "affords little evidence one way or the other" (*id.* at 8), the Court concluded that "*all* other factors suggest that a broader reading is correct" (*id.* at 9 (emphasis added)).

In the current motion, Surescripts does not offer a single new authority, persuasive or otherwise, with which it claims this Court's decision conflicts. *See* Mem. 6-10. That is not surprising, since at oral argument Surescripts admitted "no case has ever held" that "proper cases" is limited to routine cases.[4] Nor does Surescripts offer any additional authority for its proposed definition.[5] That lack of authority is dispositive. Because "there is no legal precedent for [Surescripts's] position . . . . there can be no 'substantial ground for difference of opinion' justifying interlocutory appeal on this issue." *Judicial Watch*, 233 F. Supp. 2d at 24; *see also In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2000 WL 673936, at *3 (D.D.C. Jan. 27, 2000)

---

[3] Mem. Op. ("Op.") [ECF No. 46] at 11.

[4] Nov. 19, 2019 Hr'g Tr. ("Hr'g Tr.") [ECF No. 41] at 23:3-4.

[5] Aside from a single snippet from Section 13(b)'s legislative history—which the Court concluded does not support Surescripts's interpretation (Op. 10)—Surescripts has yet to cite any authority adopting its definition of "proper" to mean "routine."

(denying § 1292(b) certification where "[p]etitioners have not cited a single case antagonistic to" the court's earlier opinion).

None of the cases Surescripts invokes aid its cause here. *See* Mem. 2, 3, 7. In each, the court considered certification in the context of a novel question of first impression or an entrenched split of legal opinion.[6] This Court, by contrast, found no such conflict in the case law. Op. 11 (holding that Surescripts's authorities "do not preclude [the FTC from] pursuing other claims"). Nor is this an issue of first impression. *See FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 36 (D.D.C. 1999); *FTC v. Abbott Labs.*, No. 92-1364, 1992 WL 335442, at *2 (D.D.C. Oct. 13, 1992).

Surescripts's suggestion that interlocutory appeal is nonetheless warranted because this Court did not define the metes and bounds of "proper cases" under Section 13(b) (Mem. 6) is likewise without merit. The Court did what courts routinely do: decided the case before it. *See* Op. 8 ("[T]his Court's task is not to define the term 'proper cases' for all scenarios, but to determine whether *this* case is proper."); *id.* at 11 ("[T]he Court concludes that the FTC's complaint sufficiently pleads a 'proper' case for a permanent injunction under Section 13(b)."). Moreover, Surescripts's attempt to justify interlocutory review based on the Court's failure to provide "an affirmative definition of the 'proper cases'" (Mem. 6) is more than a bit ironic. Surescripts continues to be unable to provide a meaningful definition of a "routine" or

---

[6] *See, e.g.*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (cited in Mem. 3) (discussing § 1292(b) certification in the context of "a new legal question" or a ruling "of special consequence"); *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (cited in Mem. 2) (addressing "novel and difficult questions of first impression"); *Nat'l Veterans Legal Servs. Program v. United States*, 321 F. Supp. 3d 150, 152, 155 (D.D.C. 2018) (cited in Mem. 7) (addressing a "novel question of statutory interpretation" and a "complete absence of any precedent from any jurisdiction"); *In re Frank Santora Equip. Corp.*, 213 B.R. 420, 424 (E.D.N.Y. 1997) (cited in Mem. 7) (granting certification based on "conflicting interpretations" in numerous court opinions).

"straightforward" antitrust case. Instead it merely insists that this case is "far from 'routine.'"
Mem. 6. In short, there is no merit to Surescripts's suggestion that the exceptional step of
certifying an interlocutory appeal is justified because this Court declined to decide how the
statute might apply to hypothetical alternative scenarios.

*Second*, Surescripts cannot demonstrate a substantial ground for difference of opinion
based on purported uncertainty about whether the FTC must issue a parallel administrative
complaint to proceed in federal court under Section 13(b)'s permanent injunction proviso. Here
again, there is no conflicting case law nor a novel issue of law. In the past four decades, every
court to address the issue, including three courts of appeals[7] and various district courts,[8] has
agreed that the FTC is not required to initiate administrative proceedings when seeking a
permanent injunction under Section 13(b).[9]

---

[7] *See FTC v H. N. Singer, Inc.*, 668 F.2d 1107, 1110-111 (9th Cir. 1982) (holding that Section
13(b) authorizes "permanent injunctions in proper cases even though the Commission does not
contemplate any administrative proceedings"); *United States* v. *JS & A Group, Inc.*, 716 F.2d
451, 456 (7th Cir. 1983) ("Had Congress intended the initiation or not of an administrative cease
and desist proceeding to affect the ability of the Commission to seek permanent injunctive relief,
it undoubtedly would have included language similar to that found in the provision governing
preliminary injunctive relief."); *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432-35 (11th Cir.
1984); (holding that the fact that "no administrative complaint has been filed" did not limit "the
inherent power of a court of equity to grant ancillary relief . . . as an incident to its express
statutory authority to issue a permanent injunction under Section 13 of the Federal Trade
Commission Act"). In addition to the courts that have directly addressed the issue, the courts of
appeals collectively have affirmed permanent injunctions under Section 13(b)'s second proviso
in scores of cases in which the Commission did not also bring an administrative complaint.

[8] *See, e.g.*, *FTC v. Va. Homes Mfg. Corp.*, 509 F. Supp. 51, 56 (D. Md. 1981), *aff'd*, 661 F.2d 920
(4th Cir. 1981); *United States v. Nat'l Dynamics Corp.*, 525 F. Supp. 380, 381 (S.D.N.Y. 1981);
*FTC v. Shire ViroPharma, Inc.*, No. 17-131-RGA, 2018 WL 1401329, at *3 (D. Del. Mar. 20,
2018), *aff'd*, 917 F.3d 147 (3d Cir. 2019).

[9] As Surescripts concedes (Mem. 9), *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019)
addressed whether Section 13(b) permits the FTC to sue to enjoin past conduct, not whether the
administrative complaint requirement in Section 13(b)(2) applies to permanent injunction suits;
Surescripts's discussion of that case (Mem. 8-9) is thus a red herring.

At oral argument, the Court acknowledged this uniform case law. Hr'g Tr. 22:4-10 (The Court: "[I]t's all in the context of this parallel-proceeding concept . . . . I could read the statute that way. . . . Courts have not done that . . . ."); *id.* at 45:16 (The Court: "I know this [reading of the statute] is inconsistent with lots of case law . . . ."). And Surescripts repeatedly disclaimed this position, both in its papers and at oral argument. MTD 17 ("[T]he FTC may also seek a *permanent* injunction in federal court, without first proceeding through its administrative court."); Hr'g Tr. 18:21-22 (Surescripts's counsel: "[T]he FTC does not need to be undertaking a simultaneous [administrative] proceeding while it seeks a permanent injunction.").

Surescripts nonetheless now devotes most of its Section 13(b) argument to the textual reading it previously forswore, insisting that "the Court's suggested interpretation" is "plausible." Mem. 8. The Court, however, made no reference to any parallel administrative proceeding requirement in its opinion. Surescripts does not cite a single case in which a court certified a question that neither party advocated and the court's decision did not address.

In any event, Surescripts's newfound contention that Section 13(b)'s permanent injunction proviso is subject to the "prerequisite" of a parallel administrative proceeding (Mem. 7-9) again misreads the statute. Section 13(b) provides two pathways for the FTC to pursue its law enforcement mission. The first path is contained in the first part of Section 13(b)(2), which authorizes the FTC to seek either "a temporary restraining order or a preliminary injunction" from a federal court during the pendency of an FTC administrative proceeding. 15 U.S.C. § 53(b)(2).[10] The second path is contained in the permanent injunction proviso, which grants the

---

[10] The first part of Section 13(b)(2) also tailors the preliminary judicial relief it authorizes to the needs of the administrative process by specifying that the judicial relief must be dissolved if the Commission does not file an administrative complaint within 20 days from issuance of the preliminary relief. Congress did not require that temporal tailoring for the permanent injunction (Continued…)

Commission the additional authority to file an enforcement action in federal court seeking a permanent injunction without invoking its administrative process. *Id.* The endpoint of each path is an order permanently prohibiting the illegal conduct: either a cease-and-desist order entered by the Commission following an administrative adjudication or a permanent injunction issued by the district court following a judicial adjudication. *See* 15 U.S.C. §§ 45(b), 53(b).

Such a structure comports with the established principle that a proviso, while often used as a limiting term, can grant additional authority beyond the power granted in an earlier clause. *See, e.g.*, *Republic of Iraq v. Beaty*, 556 U.S. 848, 858 (2009) ("The principal clause granted the President a power; the second proviso purported to grant him an *additional* power. It was not, on any fair reading, an exception to, qualification of, or restraint on the principal power."); *Alaska v. United States*, 545 U.S. 75, 106 (2005) ("Though it may be customary to use a proviso to refer only to things covered by a preceding clause, it is also possible to use a proviso to state a general, independent rule."). Here, the permanent injunction proviso in Section 13(b) of the FTC Act likewise serves a function independent from the grant of authority for temporary judicial relief to support administrative enforcement. The permanent injunction proviso is thus properly read as granting the FTC an additional power: to sue directly in federal court, without filing an administrative complaint, to request that a district court exercise its equitable powers to protect consumers harmed by anticompetitive conduct.[11]

---

proviso. *See* 15 U.S.C. § 53(b)(2). There is no need for such a requirement, because the FTC has already started a judicial proceeding by filing a complaint seeking equitable relief.

[11] Surescripts's suggestion that the FTC's ability to sue directly in federal court under the permanent injunction proviso creates a "loophole" permitting "an end-run" around Section 13(b) (Mem. 9) further underscores Surescripts's misreading of the statute. Because the permanent injunction proviso grants an additional authority independent of Section 13(b)(2), the statute does not create two "prerequisites" for a suit brought under the permanent injunction pathway.

Surescripts's reading also cannot be squared with the operation of Section 5 of the FTC Act. *See Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1888 (2019) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quotation marks omitted)). Section 5 specifies that the permanent relief at the end of the administrative path is a Commission cease-and-desist order. 15 U.S.C. § 45(b). The statute does not allow the Commission to abandon the administrative course partway through and seek a permanent judicial injunction instead. *See id.* It sets procedures for *Commission* adjudication, factfinding, and issuance of a cease-and-desist order. Section 13(b)'s permanent injunction proviso, by contrast, provides for *judicial* adjudication and factfinding in support of a permanent injunction. They are separate tracks with no way contemplated under the statutes to switch between them. And though Surescripts pays lip service to "Congress's design" (Mem. 10), Surescripts never explains why Congress would have ostensibly *sub silentio* commanded the FTC and the courts to undertake such a duplicative and potentially contradictory process. In sum, there is no reason for this Court to certify its Section 13(b) ruling, because no court has ever agreed with either of the readings Surescripts now puts forward.

**B.    Surescripts fails to establish that immediate appeal of this Court's interpretation of Section 13(b) will materially advance the ultimate termination of the litigation or conserve resources**

Even if Surescripts's atextual, unsupported, and unadministrable definition of "proper cases" prevailed on appeal, Surescripts has not demonstrated that this outcome would materially advance the ultimate termination of the litigation.[12] The question would still remain whether this

---

[12] As Surescripts's own authority explains, the first element of § 1292(b), whether there is a controlling question of law, is "closely tied" to the third element of whether an appeal may materially advance the ultimate termination of the litigation. 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3930 (cited in Mem. 2).

antitrust case is sufficiently "straightforward" or "routine" to fall within Section 13(b). Surescripts erroneously insists that "the parties agree on the only facts that are in any way relevant" to this question. Mem. 3. But the FTC has never agreed with Surescripts's purported "fact" that "this is not the kind of 'routine' enforcement case that would indisputably bring this case within the ambit of Section 13(b)" (Mem. 3). And resolving that dispute would require application of an amorphous standard—that Surescripts has never defined—to the detailed factual allegations of the FTC's 55-page complaint.

As this Court acknowledged in holding this case "proper," the FTC's theory of violation—maintenance of monopolies through exclusive dealing arrangements—is firmly grounded in Circuit precedent, *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) (en banc) (per curiam). Op. 8. Indeed, as detailed in the FTC's opposition to Surescripts's motion to dismiss, *Microsoft* "provides a roadmap for assessing monopolization claims involving exclusive contracts, technology, and network effects."[13] *Microsoft* examined a market with a "barrier to entry" stemming from a technology network characterized by a "'chicken-and-egg' situation," 253 F.3d at 55; the FTC alleges that Surescripts has unlawfully monopolized two markets characterized by the same barrier.[14] *Microsoft* held that exclusive deals that "ke[pt] rival browsers from gaining widespread distribution" were anticompetitive, 253 F.3d at 72; contemporaneous Surescripts business documents explain how Surescripts's actual and de facto exclusive deals "diminished" its competitor's "ability to rapidly become a full national alternative to Surescripts," Compl. ¶ 132. And *Microsoft* held that the government prevails when it shows that a monopolist "squash[ed] nascent, albeit unproven competitors," 253 F.3d at 79; the

---

[13] Pl. FTC's Mem. of Law in Opp'n to Def. Surescripts, LLC's Mot. to Dismiss Compl. [ECF No. 36] at 21.

[14] Compl. for Injunctive & Other Equitable Relief ("Compl.") [ECF No. 1] ¶¶ 22-32.

FTC alleges that Surescripts's exclusive contracts blocked entry and expansion by a competitor, with Surescripts executives gloating: "It[']s nice when a plan comes together," Compl. ¶ 3.

Thus, even if the D.C. Circuit were to adopt the position that "proper" means "routine," it would likely remand the case for further proceedings because *Microsoft* provides sufficient guidance under Surescripts's standard. "Immediate appeal [is] inappropriate" where, as here, "the character of the trial is not likely to be affected." Wright & Miller, *supra* n.12.[15]

In addition, as Surescripts admits (Mem. 5), even if an appeal resulted in dismissal of the FTC's case in federal court, litigation would proceed under the FTC administrative process. A full-blown administrative antitrust trial, *see* 15 U.S.C. § 45(b), followed by an appeal to the Commission, *see id.*, and review by a circuit court of appeals, *see id.* § 45(c), is likely to be at least as costly to the parties as federal court litigation. And while administrative proceedings may yield some savings to the federal judicial system at the district court level, "§ 1292(b) is designed to permit interlocutory appeals only for the purpose of minimizing the total burdens of litigation on parties and the judicial system." Wright & Miller, *supra* n.12. In sum, because appellate resolution of whether this case is "proper" will not materially advance the ultimate termination of this litigation or conserve the resources of either Surescripts or the FTC, interlocutory appeal is inappropriate.

---

[15] Granting Surescripts's motion for interlocutory appeal would also likely impose a substantial cost on all parties by disrupting the current negotiated discovery schedule. Though Surescripts's motion is presently silent on the issue, were the Court to grant interlocutory appeal Surescripts would almost certainly move for a stay pending appeal, likely resurrecting its discredited argument that the "proper cases" issue is a question of subject-matter jurisdiction and then arguing that a stay is appropriate while the D.C. Circuit resolves the question of subject-matter jurisdiction. *See Beaty v. Republic of Iraq*, No. 03-0215 (JDB), 2007 WL 1169333, at *2 (D.D.C. Apr. 19, 2007) (Bates, J.).

II.     **This Court's Conclusion that the FTC's Complaint States Claims for Unlawful Exclusive Dealing Does Not Warrant Interlocutory Review**

   A.     **Surescripts fails to establish a substantial ground for difference of opinion on this Court's exclusive dealing ruling**

Applying Supreme Court and circuit precedent, this Court concluded that the FTC's allegations sufficiently "state a claim of monopolization" and that Surescripts's conduct "do[es] not need to constitute predatory pricing for Surescripts's exclusionary practices to constitute illegal maintenance of a monopoly." Op. 14. That correct conclusion is fully consistent with binding antitrust jurisprudence. The Supreme Court has repeatedly directed courts to look at "market realities" and "resolve antitrust claims on a case-by-case basis, focusing on the particular facts disclosed by the record." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 467 (1992) (quotation marks omitted); *see also Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018) ("[L]egal presumptions that rest on formalistic distinctions rather than actual market realities are generally disfavored in antitrust law." (quotation marks omitted)). As Surescripts's own authority explains, courts resolve antitrust claims by focusing on the "economic realities" of the conduct before them. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 595 (1986) (quoted in Mem. 11). Here, the Court's application of the exclusive dealing framework rather than the predatory pricing paradigm rested on the very case-specific attention to the market realities that antitrust analysis requires. *See* Op. 12-18.

Contrary to Surescripts's assertion (Mem. 11), this Court's holding does not create any "tension with Supreme Court precedent." In some circumstances, courts determine antitrust liability in part based on whether prices are below cost. *See, e.g.*, *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 451 (2009) (rejecting a price squeeze claim where predatory pricing elements were not met); *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222-25 (1993) (holding that a predatory pricing claim requires below-cost pricing and

a dangerous probability of recoupment). But as this Court explained, "none of the authorities Surescripts cites stands for the proposition that a plaintiff *must* allege predatory pricing to succeed on a Section 2 claim." Op. 13 (discussing *Pac. Bell Tel. Co.*, 555 U.S. 438; *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000); and *NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) (en banc)).

Surescripts again points to no authorities that contradict this conclusion. *See* Mem. 12 (discussing same authorities). As this Court has held, "mere disagreement, even if vehement, with a court's ruling does not establish a substantial ground for difference of opinion sufficient to satisfy the statutory requirements for an interlocutory appeal." *Palmieri*, 2015 WL 13679956, at *2 (cleaned up). That is all Surescripts offers. And while Surescripts may wish to extend the Supreme Court's predatory pricing line of cases to cover its own exclusive dealing conduct (Mem. 12), that argument is, "at best, an argument by analogy for extension of the law," and thus "insufficient to create a 'substantial ground for difference of opinion' as that term is used in § 1292(b)." *Judicial Watch*, 233 F. Supp. 2d at 22-23.

Similarly, Surescripts's claim that the Court wrongly applied *Microsoft* (Mem. 13) again "mischaracterizes the holdings in *Microsoft*" (Op. 13). Surescripts glosses over the difference between offering lower prices, as Microsoft did with Internet Explorer, and offering lower prices conditioned on exclusivity, as the FTC alleges here, Compl. ¶¶ 65-68, 76-79. *Microsoft* never held or even suggested that the price-cost test applies where prices are conditioned on exclusivity. Notably, the en banc D.C. Circuit condemned contracts where Microsoft conferred value conditioned upon exclusivity. *Microsoft*, 253 F.3d at 68-69 (finding illegal exclusive dealing where Microsoft's agreements to provide easy access to IAPs' services from the Windows desktop were conditioned on agreement to promote Microsoft's Internet Explorer

exclusively); *see also* Op. 13 ("The relevant portion of the en banc D.C. Circuit's decision for this case is its ruling that Microsoft's exclusive contracts *did* violate Section 2 of the Sherman Act."). Moreover, even if this Court's application of *Microsoft* were in conflict with the D.C. Circuit's holding—and it is not—Surescripts's argument is nothing more than "[t]he mere claim that a decision has been wrongly decided," which "is not enough to justify an interlocutory appeal." *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1117 (D.D.C. 1996).

Finally, there is no merit to Surescripts's argument that the Court created substantial ground for difference of opinion by looking to the wrong Third Circuit precedent. *See* Mem. 12-13. Surescripts first argues that the Court erred by following *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012), which Surescripts claims "was a marked departure" from D.C. Circuit law. Mem. 12. But *ZF Meritor* repeatedly relied on the D.C. Circuit's *Microsoft* decision, including the "importance of significant barriers to entry in maintaining monopoly power." 696 F.3d at 285 (discussing *Microsoft*, 253 F.3d at 55 (describing how "[t]his 'chicken-and-egg' situation" creates a significant barrier to entry)). The chicken-and-egg problem, present in this case, Compl. ¶¶ 22-32, can be a rich environment for anticompetitive exclusive dealing. *See Microsoft*, 253 F.3d at 55 (explaining that the chicken-and-egg "barrier to entry gives consumers reason to prefer the dominant operating system"). And even without the analysis of *ZF Meritor*, this Court found "the FTC's allegations still state a claim of monopolization under the D.C. Circuit's decision in *Microsoft*." Op. 14 (citing *Microsoft*, 253 F.3d at 69-71).

Surescripts asserts (Mem. 13) that the Court should instead have relied on *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394 (3d Cir. 2016). But that case does not support Surescripts's formalistic, bright line rule that any monopolization claim involving pricing must be considered under the price-cost test. In fact, *Eisai* refused to apply the price-cost test, and

instead analyzed the "particular facts disclosed by the record," including all aspects of the defendants' scheme, before concluding for a variety of reasons—not all related to price—that the conduct was not anticompetitive. *Id.* at 403, 408-09. Simply put, there is no substantial ground for difference of opinion about the Court's decision, because Surescripts continues to fail to point to any contrary authority.

**B.** **Surescripts fails to establish that this Court's exclusive dealing ruling involves a controlling question of law**

Surescripts's contention that its conduct cannot be analyzed as exclusive dealing also fails to establish a controlling question of law, as it reflects a factual dispute with the FTC's well-pled allegations. Crediting the Complaint's allegations, this Court held that the FTC sufficiently alleges that Surescripts's contracts are exclusive because their "practical effect" is to "prevent[] customers from working with other e-prescribing platforms." Op. 12 (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 326 (1961), and citing Compl. ¶¶ 79, 129). Surescripts continues to argue that this is not so because its exclusivity program is a mere "optional low pricing plan." Mem. 11. The FTC's complaint alleges it is not. *See* Compl. ¶¶ 79, 129, 182-84. This is a paradigmatic dispute of fact. And because Surescripts's "largely factual" disputes "speak to the merits and the need for further factual development through discovery" (Op. 17), Surescripts fails to demonstrate an essential requirement for the extraordinary remedy of immediate interlocutory appeal.

**C.** **Surescripts fails to establish that immediate appeal of this Court's exclusive dealing ruling will materially advance the ultimate termination of the litigation**

Finally, even if the D.C. Circuit were to conclude that Surescripts's loyalty discounts and incentives should be evaluated under the predatory pricing framework, that would not terminate this litigation. That is because, as this Court observed, the FTC alleges that "Surescripts engaged

in other anticompetitive conduct." Op. 17. Specifically, the FTC alleges that Surescripts launched a series of threats—what Surescripts termed "nuclear missile[s]"—to ensure Allscripts, a critical EHR customer, continued its exclusive use of Surescripts. Compl. ¶¶ 4, 121-24. Surescripts also successfully pressured Allscripts to phase out its direct connections with pharmacy benefit managers for eligibility, stymying an alternative business model that could have eliminated Surescripts as a middleman. *Id.* ¶¶ 103-07, 112. Surescripts eliminated the risk of competition posed by its closest possible competitor, RelayHealth, by entering into a pretextual "value added reseller" agreement that prohibited RelayHealth from competing in routing for six years. *Id.* ¶¶ 138-49. Many of Surescripts's contracts also include "clawbacks" that require a non-loyal customer both to pay the financial penalty of higher prices in the future and to refund the previously received discounts or incentives. *Id.* ¶¶ 72-75, 79. These acts, standing alone, are sufficient to maintain the FTC's claims of monopolization against Surescripts. Thus, even if Surescripts were to win on its predatory pricing claim at the D.C. Circuit, the case would still have to be remanded for further proceedings in this Court to address Surescripts's extensive non-pricing conduct. An immediate appeal would therefore do nothing to hasten the ultimate termination of this litigation.

## CONCLUSION

For the foregoing reasons, the FTC respectfully requests that this Court deny

Surescripts's motion for interlocutory appeal.

Dated: March 27, 2020                                   Respectfully submitted,

                                                        */s/ Markus H. Meier*
                                                        Markus H. Meier (D.C. Bar 459715)
                                                        Federal Trade Commission
                                                        600 Pennsylvania Avenue, NW
                                                        Washington, DC 20580
                                                        Tel: 202-326-3759
                                                        mmeier@ftc.gov

                                                        Bradley S. Albert
                                                        Elizabeth R. Hilder
                                                        David B. Schwartz
                                                        Joseph P. Mathias

                                                        *Counsel for Plaintiff Federal Trade*
                                                        *Commission*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of March, 2020, I have electronically filed a true and correct copy of the Federal Trade Commission's Opposition to Surescripts's Motion for Interlocutory Appeal with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

Dated: March 27, 2020

*/s/ Markus H. Meier*
Markus H. Meier (D.C. Bar 459715)
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: 202-326-3759
mmeier@ftc.gov

*Counsel for Plaintiff Federal Trade Commission*