**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 19-1080 (JDB)** |
| **SURESCRIPTS, LLC,** | |
| **Defendant.** | |

**<u>REPLY IN SUPPORT OF SURESCRIPTS' MOTION TO AMEND THE COURT'S
ORDER DENYING SURESCRIPTS' MOTION TO DISMISS IN ORDER TO CERTIFY
IT FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

ARGUMENT .................................................................................................................1

I.      THE FTC FAILS TO EXPLAIN WHY THE COURT SHOULD DENY AN
        INTERLOCUTORY APPEAL ON THE DISPOSITIVE QUESTION WHETHER
        THE FTC'S CASE IS "PROPER" UNDER SECTION 13(b) ...........................................2

        A.      The FTC Is Wrong That One Published District Court Decision In Its
                Favor Means That There Is Not A "Substantial Ground For Difference Of
                Opinion"........................................................................................................2

        B.      The FTC Fails To Rebut That A Determination That This Is Not A
                "Proper Case" Will "Materially Advance The Termination Of This
                Litigation" ....................................................................................................8

II.     THE FTC DOES NOT REBUT SURESCRIPTS' SHOWING THAT WHETHER
        NON-"PREDATORY" LOW PRICING IS ANTICOMPETIVE MERITS
        INTERLOCUTORY REVIEW ...................................................................................10

CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*,
  173 F. Supp. 3d 320 (E.D. Va. 2016) ...................................................................................14

*Al Maqaleh v. Gates*,
  620 F. Supp. 2d 51 (D.D.C. 2009) (Bates, J.) ..........................................................................3

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) ...........................................................................................................11, 12

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993) ....................................................................................................1, 11, 12, 13

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
  479 U.S. 104 (1986) ...........................................................................................................11, 12

*DRFP, LLC v. Republica Bolivariana de Venezuela*,
  945 F. Supp. 2d 890 (S.D. Ohio 2013) ..................................................................................13

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
  821 F.3d 394 (3d Cir. 2016) ...................................................................................................13

*FTC v. Abbott Laboratories*,
  No. Civ. A. No. 92-1364, 1992 WL 335442 (D.D.C. Oct. 13, 1992) ...............................3, 4, 6

*FTC v. Ewing*,
  No. 2:14-cv-00683, 2017 WL 4797516 (D. Nev. Oct. 24, 2017) .............................................7

*FTC v. Int'l Diamond Corp.*,
  No. C-82-0878, 1983 WL 1911 (N.D. Cal. Nov. 8, 1983) .......................................................7

*FTC v. Mylan Laboratories, Inc.*,
  62 F. Supp. 2d 25 (D.D.C. 1999) ........................................................................................3, 4

*FTC v. H. N. Singer, Inc.*,
  668 F.2d 1107 (9th Cir. 1982) .............................................................................................6, 7

*FTC v. Wyndham Worldwide Corp.*,
  10 F. Supp. 3d 602 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3d Cir. 2015) .....................................3

*Hengle v. Asner*,
  ___ F. Supp. 3d ___, No. 3:19CV250, 2020 WL 855970 (E.D. Va. Feb. 20,
  2020) ........................................................................................................................................3

*Ohio v. American Express,*
  138 S. Ct. 2274 (2018) ...........................................................................................9

*Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.,*
  555 U.S. 438 (2009) ..........................................................................................11, 12

*Reese v. BP Expl. (Alaska) Inc.,*
  643 F.3d 681 (9th Cir. 2011) ...............................................................................2, 3

*In re Donald J. Trump,*
  874 F.3d 948 (6th Cir. 2017) ...................................................................................3

*United States v. Dish Network LLC,*
  256 F. Supp. 3d 810 (C.D. Ill. 2017) .......................................................................7

*United States v. Microsoft Corp.,*
  253 F.3d 34 (D.C. Cir. 2001) (en banc) (per curiam) ...............................8, 9, 12, 13

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.,*
  549 U.S. 312 (2007) ..............................................................................................11

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,*
  494 F. Supp. 1190 (E.D. Pa. 1980) ..........................................................................5

*ZF Meritor LLC v. Eaton Corporation,*
  696 F.3d 254 (3d Cir. 2012) ...................................................................................13

**Statutes**

28 U.S.C. § 1292(b) ................................................................................. *passim*

**Other Authorities**

77 Fed. Reg. 47070-02 (July 31, 2012) .......................................................................5

*Hr'g Before the H. Comm. on Energy & Commerce, Subcomm. on Consumer
  Prot. and Commerce,* 116th Cong. 3 (May 8, 2018) (Prepared Statement of
  Commn'r Noah Joshua Philips), *available at*
  https://www.ftc.gov/system/files/documents/public_statements/1519310/philli
  ps_-_njp_oversight_statement_5-8-19.pdf ..............................................................9

Joshua Sisco, *FTC's Surescripts case closely tracks SCOTUS Amex decision,*
  MLEX (May 22, 2019) ...............................................................................................9

**ARGUMENT**

The FTC has now had its chance to explain why it is appropriate to continue this litigation through trial and leave until the end the questions (1) whether the FTC's pursuit of a permanent injunction in federal court is a "proper case" under Section 13(b), 15 U.S.C. § 53(b); and (2) what standard under Section 2 of the Sherman Act, 15 U.S.C. § 2, should govern the law of the case.  It has not advanced its cause.  Consider that it does not dispute the following:

1.     The "settled" law on the question whether an antitrust case is a "proper case" under Section 13(b) amounts to just one published and one unpublished district court decision that are more than two decades old.

2.     If the FTC's case is not "proper," this federal antitrust case will be dismissed in its entirety and the FTC will be left to pursue its claims in the FTC's administrative litigation process.

3.     If the FTC's case is not "proper," all remaining disagreements between the parties will likely be resolved because Surescripts has a good faith reason to believe that once it is no longer subject to a demand for disgorgement, it will settle the remaining claims.

4.     If the Supreme Court's decision in *Brooke Group Ltd. v. Brown & Williamson Tobacco Corporation*, 509 U.S. 209 (1993), applies, the FTC cannot allege facts sufficient to plead that Surescripts' pricing-related conduct is anticompetitive.

5.     Expending resources on litigating the case while leaving these core legal issues unresolved until the end would be a waste of judicial resources (and the parties' resources) if Surescripts prevails on appeal at the conclusion of the ultimate trial in this case.

This is a paradigmatic case for an interlocutory appeal if there ever was one: a favorable result on a pair of separate but dispositive legal issues could end the case entirely.  Although the FTC has much to say about *why it believes it is right on the merits*, it actually leaves the core arguments in Surescripts' Section 1292(b) motion unrebutted.  We briefly elaborate on those points below.

## I.    THE FTC FAILS TO EXPLAIN WHY THE COURT SHOULD DENY AN INTERLOCUTORY APPEAL ON THE DISPOSITIVE QUESTION WHETHER THE FTC'S CASE IS "PROPER" UNDER SECTION 13(b)

The FTC does not dispute Surescripts' position that the application of Section 13(b)'s "proper case" standard is a "controlling question of law."  Instead, it contends that this "controlling question of law" is (1) not one for which there is a "substantial ground for difference of opinion" and that (2) resolution of the issue will not "materially advance the termination of this litigation." 28 U.S.C. § 1292(b).  The FTC is wrong on both scores.

### A.    The FTC Is Wrong That One Published District Court Decision In Its Favor Means That There Is Not A "Substantial Ground For Difference Of Opinion"

The FTC contends that a "substantial ground for difference of opinion" means that Surescripts must point to "legal precedent" supporting its position—in other words, there must be a division of authority.  FTC's Opp'n to Surescripts' Mot. for Interlocutory Appeal ("Resp.") at 3 (Mar. 27, 2020), ECF No. 59 (arguing that a "lack of [conflicting] authority is dispositive" here) (footnote and citation omitted).  That is not the law.  Courts have repeatedly held that where a party raises *a difficult or novel legal question*, the existence of the difficult question (combined with the prospect of ending a case that otherwise would not continue) is sufficient to show a "substantial ground for difference of opinion."  28 U.S.C. § 1292(b).  As the Ninth Circuit has explained, "interlocutory appellate jurisdiction does not turn on a prior court's having reached a conclusion adverse to that from which appellants seek relief.  *A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely*

*where they have already disagreed.*"  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir.

2011) (emphasis added).  Numerous other courts have likewise so held.  *See, e.g.*, *In re Donald J.*

*Trump*, 874 F.3d 948, 952 (6th Cir. 2017) (granting interlocutory review of an order that did not

conflict with any other decision); *Hengle v. Asner*, ___ F. Supp. 3d ___, No. 3:19CV250, 2020

WL 855970, at *9 (E.D. Va. Feb. 20, 2020) (noting that "courts have recognized that a substantial

ground for difference of opinion exists when resolution of the question presented 'is not

substantially guided by previous decisions' and the question 'is difficult'" (citations omitted));

*FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 634 (D.N.J. 2014) (holding, over the

FTC's objection, that its order presented "novel, complex statutory interpretation issues that give

rise to a substantial ground for difference of opinion" meriting interlocutory review, *even in the*

*absence of precedent to the contrary*) (citation omitted), *aff'd*, 799 F.3d 236 (3d Cir. 2015).  This

Court explained as much in *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51 (D.D.C. 2009) (Bates, J.),

when it rejected the argument that "a conflict is needed to satisfy this aspect of § 1292(b)" and

concluded instead that substantial ground for difference of opinion was present "given the novelty

of the issues" and the fact that the Court's analysis "was not the mechanical, routine task petitioners

apparently take it to have been."  *Id.* at 55 (citation omitted).

The question of the proper interpretation of Section 13(b) is right in line with what courts

have held qualifies as a difficult or novel issue: it involves a potentially dispositive question of

statutory interpretation for which there is (generously speaking) a dearth of precedent.  The FTC's

response makes this clear.  The FTC argues that because there are two cases considering the

"proper case" issue present here, *see FTC v. Abbott Laboratories* ("*Abbott*"), No. 92-1364, 1992

WL 335442, at *2 (D.D.C. Oct. 13, 1992), and *FTC v. Mylan Laboratories, Inc.* ("*Mylan*"), 62 F.

Supp. 2d 25 (D.D.C. 1999), the issue presented for potential appeal cannot be novel.[1]  Tellingly,

these are *the only two cases* to ever analyze whether *an antitrust case* is a "proper case" for a

permanent-injunction proceeding.  Moreover, at best, only the unpublished decision in *Mylan* is

arguably factually on point, given that *Abbott* involved an FTC suit related to price fixing, which

required no special FTC expertise in the first instance—a fact that the *Abbott* decision

acknowledged.  1992 WL 335442, at *2 (reasoning that "Federal Courts have shied away from

accepting direct court actions by the Commission, such as this, if the offending conduct interjects

the court into areas of Commission expertise involving the creation and monitoring of new

concepts of unfair competitive trade practice," but finding that standard was not met in *Abbott*).[2]

The FTC wants to avoid appellate review here *precisely because there is no appellate*

*precedent on whether and when Section 13(b) authorizes the FTC to seek a permanent injunction*

*in an antitrust case* and any appeal risks unsettling its ability to circumvent the enforcement regime

that Congress established when it created the FTC.  The lack of any authority is not because

Surescripts' position has been repeatedly litigated to an unfavorable result.  Rather, there is little

to no precedent on this issue precisely because the FTC is charting a new enforcement path.  In

---

[1]  The FTC's response also seems to suggest that the Court adopted the FTC's proposed interpretation of Section 13(b)'s "proper case" requirement.  *See* Resp. at 2–5.  Not so.  Though the definition the Court ultimately settled on is necessarily broader than Surescripts' understanding of the statutory language—how much broader remains unclear—*the Court rejected the FTC's argument that "proper cases" is synonymous with "all cases."*  Mem. Op. at 8 (Jan. 17, 2020), ECF No. 45 ("There is thus considerable weight to Surescripts'[] argument that 'proper cases' is not synonymous with 'all cases,' for such an interpretation would make the phrase superfluous.").  The Court's rejection of both parties' interpretations in favor of a minimalist middle-ground approach highlights the difficulty of the interpretative question, as does the Court's acknowledgement that the text of the statute "affords little evidence one way or the other[.]"  *Id.*

[2]  Moreover, as Surescripts has previously argued, one can hardly say that the court carefully considered this issue in *Mylan*, given that the court plainly misread *Abbott*.  *See* 62 F. Supp. 2d. at 36 (looking to *Abbott*'s introductory acknowledgement of the facially broad language of Section 13(b) rather than its subsequent consideration of the "precise scope" of the permanent injunction proviso).

2012, the FTC decided that it would abandon its policy of only seeking disgorgement for "clear" violations—*i.e.*, "routine" cases. *See* Withdrawal of the Commission Policy Statement on Monetary Equitable Remedies in Competition Cases, 77 Fed. Reg. 47070-02, 47071 (July 31, 2012) (laying out the FTC's new position that it can seek disgorgement even for "novel conduct"). This policy shift meant the FTC was incentivized to bypass its administrative process (where it cannot seek disgorgement) in anticompetitive conduct cases and come straight to federal court and demand monetary relief. In doing so here, the FTC also sought a permanent injunction. The absence of case law in Surescripts' favor is not because the law is "settled" against it. Instead, there is virtually no case law on this point because the FTC has not had a long-standing practice of seeking a permanent injunction and disgorgement for monopolistic conduct on which it has not previously opined through its administrative process.

The court's observation in *Zenith Radio Corporation v. Matsushita Electric Industrial Company*, 494 F. Supp. 1190, 1243 (E.D. Pa. 1980)—another case dealing with the appropriateness of interlocutory review of the proper interpretation of an older statute that received little judicial attention—is apropos. The court noted that there were "few prior decisions construing the [Antidumping] Act" and those decisions "had no occasion to explore it in the depth which we have attempted to reach herein." *Id.* Accordingly, the court observed, "this opinion and order not only involve an issue which is of first impression, but also involve an Act which, despite its venerable age (64 years), is virtually a statute of first impression." *Id.* Although the court was "confident that our analysis of the statute is correct," it nevertheless observed that "we are aware that our analysis is highly complex, and that the issues presented are novel. Moreover, we have engaged in the always difficult enterprise of construing a statute which is not clear on its face, a

task compounded by the statute's vintage." *Id.*   On that basis, the court certified the case for interlocutory appeal.[3]

While these cases are instructive, it bears noting that there is case law that weighs in Surescripts' favor.  These cases hold that "proper case" is limited to straightforward Section 5 challenges which do not require the FTC's specialized expertise—*i.e.*, routine cases.  Indeed, the FTC's insistence to the contrary that "Surescripts has yet to cite any authority adopting its definition of "proper" to mean "routine," Resp. at 5, is wrong and the precedent on this point underscores that there is "substantial ground for difference of opinion" on the meaning of "proper." *Abbott*, which is one of the FTC's favorite cases, itself acknowledged that a "proper" case is dependent on the amount of agency expertise needed to resolve the issue.  *Abbott*, 1992 WL 335442, at *2.  In so holding, *Abbott* relied on the Seventh Circuit's decision in *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1028 (7th Cir. 1988), which observed that "Congress' purpose in enacting section 13(b) was to protect the American consumer" from "*the 'routine fraud' case*, where the nature of the deceptive practice required no extensive administrative elaboration."  Several other cases likewise so hold and, while not necessary to prove Surescripts' point, courts do use the word "routine."[4]

---

[3] The FTC similarly falsely suggests that Surescripts takes the position that there is a "substantial ground for a difference of opinion" because the Court did not provide a fulsome interpretation of "proper cases."   Resp. at 4 ("Surescripts'[] suggestion that interlocutory appeal is nonetheless warranted because this Court did not define the metes and bounds of 'proper cases' under Section 13(b) (Mem. 6) is likewise without merit.")   That response misses the point.   Surescripts' point was *not that the Court is required to define the language.*   To the contrary, Surescripts noted that the Court itself proffered a *third interpretation* of the meaning of "proper cases" that was different from the interpretations proposed by both parties.   Three intelligent parties taking three different views simply provides further evidence that the statute is not a model of clarity and provides a "substantial ground for difference of opinion."

[4] *See e.g.*, *FTC v. H. N. Singer, Inc.*, 668 F.2d 1107, 1110–11 (9th Cir. 1982) (noting that the "intent of the final clause of § 13(b) was explained" by its legislative history to afford the FTC "the ability, in the routine fraud case, to merely seek a permanent injunction," and concluding that

The remainder of the FTC's argument that there is no "substantial ground for disagreement" is a rehash of its position on the merits of the Section 13(b) question and a lengthy rejection of this Court's proffered interpretation at oral argument.  Resp. at 5–8.  In so arguing, the FTC attempts to recast Surescripts' citation to this Court's proposed interpretation of Section 13(b)—which is simply evidence that the statute is not clear—as an attempt to seek interlocutory review of an issue that is not before the Court.  *See* Resp. at 6 ("The Court, however, made no reference to any parallel administrative proceeding requirement in its opinion.  Surescripts does not cite a single case in which a court certified a question that neither party advocated and the court's decision did not address.").  That characterization of Surescripts' position is a red herring.  There is *only one Section 13(b) issue at play here* and that is whether this is a "proper case" within the meaning of Section 13(b).  Yes, the FTC is right that there have been different positions put forward for interpreting "proper case"; those would be part of the record should the interlocutory appeal proceed.  The only issue for now, however, is whether the disagreement over that position qualifies as a "substantial ground for disagreement."  That the FTC expends nearly half of its opposition to Surescripts' § 1292(b) Petition on the Section 13(b) issues to refute this Court's *sua sponte* proposed interpretation of "proper case" at oral argument underscores that this question qualifies for interlocutory review.

---

"a routine fraud case is a proper case"); *FTC v. Ewing*, No. 2:14-cv-00683, 2017 WL 4797516, at *10 (D. Nev. Oct. 24, 2017) (applying *Singer* to a "routine fraud case"); *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 984 (C.D. Ill. 2017) ("A proper case is a straightforward violation of section 5 [of the FTC Act] that required no application of the FTC's expertise to a novel regulatory issue through administrative proceedings." (internal quotation omitted)); *FTC v. Int'l Diamond Corp.*, No. C-82-0878, 1983 WL 1911, at *2 (N.D. Cal. Nov. 8, 1983) (quoting the Senate Report in concluding that "[t]he legislative history . . . [indicates] that Congress intended Section 13(b) to be limited to garden variety fraudulent acts and practices").  In each of these cases, the FTC's administrative process was not needed because of the routine nature of—and settled law surrounding—the FTC's legal theory.

**B.      The FTC Fails To Rebut That A Determination That This Is Not A "Proper Case" Will "Materially Advance The Termination Of This Litigation"**

Surescripts has repeatedly observed that, as a practical matter, if this is not a "proper case" (meaning the FTC cannot seek disgorgement), not only is this federal case over, but a full settlement of the whole dispute is likely.  *See* Tr. of Mot. Hr'g (Nov. 19, 2019) at 79:19–80:5 (explaining that disgorgement "is the trigger mechanism and . . . why we care"); Surescripts' Resp. to the Court's Min. Order at 2 (Jan. 10, 2020), ECF No. 42 (noting that "[h]ad the FTC only demanded injunctive relief, it is very likely that this litigation would never have commenced" because Surescripts "would have entered into a consent order that governed its subsequent conduct and settled with the FTC"); Mem. in Support of Surescripts' Mot. to Amend the Court's Order Den. Its Mot. to Dismiss in Order to Certify it for Interlocutory Appeal ("Mem.") at 10 (Mar. 6, 2020), ECF No. 56-1 (predicting that "without the [FTC's] ability to seek monetary relief, the case may settle").  The FTC has never suggested otherwise and does not now refute those arguments.  That silence speaks volumes.

Instead, to avoid interlocutory appeal, the FTC now argues that this suit is ultimately *a routine case (and therefore, by implication, a "proper case" even under Surescripts' interpretation)*, and so an interlocutory appeal will not "materially advance the termination of this litigation."  This position is the only justification for the discussion of *United States v. Microsoft Corporation*, 253 F.3d 34 (D.C. Cir. 2001) (en banc) (per curiam), which is the basis for the FTC's argument—for the first time—that its challenge to Surescripts' behavior is "routine."  Resp. at 9–10.  It is not.  Not only is the FTC's belated recasting of its position as "routine" in conflict with the FTC's prior public statements on this litigation, but it is also beside the point.[5]  For one, even

---

[5] The FTC drastically overstates *Microsoft*'s application to this suit.  But even under the least favorable interpretation of *Microsoft*, the FTC's allegations of *de facto* exclusionary conduct arising out of low prices in a two-sided market simply cannot make for a straightforward, routine

if the D.C. Circuit did not reject out of hand the FTC's sudden reversal of position, a straightforward comparison of the allegations in this case and *Microsoft* makes clear that the FTC's theory of harm in this case is anything but routine.

More to the present point, however, as the FTC acknowledges, *see* Resp. at 2, the question for appeal is "whether the language and structure of Section 13(b) of the FTC Act precludes this suit." Mem. at 1. Thus, the question under Section 1292(b) is *if the court agrees with Surescripts that this is not a proper case* (not if the Court agrees with the FTC), will that decision materially advance the termination of the litigation? The only credible answer to that question is yes for two reasons that now stand unrebutted.

First, since the FTC would be unable to pursue disgorgement through its administrative proceedings, Surescripts continues to believe that the parties could resolve their dispute. In light of that possibility, there is no reason to expend the considerable resources that both sides will invest in a full federal antitrust litigation through trial.

Second, even assuming that the dismissal of this case would be followed by the full course of administrative proceedings, interlocutory appeal and dismissal would still save the sizable

---

case—especially in light of the Supreme Court's recent seminal-yet-underdeveloped guidance in analyzing two-sided markets. *See Ohio v. Am. Express*, 138 S. Ct. 2274 (2018) ("*Amex*"). Indeed, in recognizing the novelty of this suit, the FTC's then-Director of the Bureau of Competition emphasized that it raises new questions regarding the application of the *Amex* decision. "[F]or those of you who paid attention to the *Amex* case, this is that. It is very closely related in terms of this structure of a transactional platform" but the two cases involve "totally different industries, totally different markets, [and have] lots of different facts." Joshua Sisco, *FTC's Surescripts case closely tracks SCOTUS Amex decision*, MLEX (May 22, 2019). FTC Commissioner Phillips also testified about this case before Congress, calling it a "case [that] addresses important competition issues like two-sided markets, network effects, and innovation harms." *Oversight of the Federal Trade Commission: Strengthening Protections for Americans' Privacy and Data Security: Hr'g Before the H. Comm. on Energy & Commerce, Subcomm. on Consumer Prot. and Commerce*, 116th Cong. 3 (May 8, 2018) (Prepared Statement of Commn'r Noah Joshua Philips), *available at* https://www.ftc.gov/system/files/documents/public_statements/1519310/phillips_-_njp_oversight_statement_5-8-19.pdf.

expense of a complex and fact-intensive antitrust trial. *The FTC tellingly agrees that interlocutory review "may yield some savings to the federal judicial system"* but believes that the parties would see no benefit. Resp. at 10 (emphasis added). But the FTC forgets that the appropriate comparator to interlocutory appeal is appeal after final judgment—not no appeal at all. If the D.C. Circuit ultimately sides with Surescripts and dismisses this case after final judgment, administrative proceedings could still follow, just as they could after a successful interlocutory appeal. The difference is that only interlocutory appeal would avoid the waste of a protracted and potentially unnecessary federal trial, to both the parties and the Court. That fact, combined with the dearth of precedent on a dispositive question, underscore that interlocutory review is appropriate here.

## II. THE FTC DOES NOT REBUT SURESCRIPTS' SHOWING THAT WHETHER NON-"PREDATORY" LOW PRICING IS ANTICOMPETITIVE MERITS INTERLOCUTORY REVIEW

Surescripts also seeks interlocutory review of this Court's conclusion that Surescripts' optional low-pricing plan could give rise to antitrust liability even though the FTC does not allege those prices are below cost. Just like the question of the proper interpretation of Section 13(b), this antitrust issue involves a controlling question of law as to which there is substantial ground for difference of opinion, such that an immediate appeal from the Court's order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b).

*First*, this is a controlling question of pure law. The FTC misses the point when it argues that there is a dispute of fact over whether Surescripts' low-pricing program had the practical effect of preventing Emdeon from gaining market share. *See* Resp. at 14. Surescripts' position is that, as a matter of law, *any* claim that a monopolist engaged in exclusionary conduct by offering low prices must allege that the prices were "predatory"—*i.e.*, below cost and that the monopolist has a dangerous probability of recoupment. *See* Mem. in Support of Surescripts Mot. to Dismiss Compl. ("Mem. ISO Mot. to Dismiss") at 31 (July 12, 2019), ECF No. 30. The existence of downstream

factual disputes between the parties does nothing to lessen the controlling nature of this question. If the D.C. Circuit agrees with Surescripts that controlling Supreme Court precedent requires the FTC to allege below-cost pricing to get in the door on a low-cost antitrust claim, that decision would likely terminate this case.

*Second*, the FTC's claim that there can be no substantial ground for difference of opinion here because the Court's decision is fully consistent with Supreme Court and Circuit precedent is flatly wrong.  For decades, the Supreme Court has consistently held that low pricing is pro-competitive and can only form the basis of an antitrust claim—across the spectrum of possible antitrust theories—if it is set below an appropriate level of the seller's cost. *See Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.*, 555 U.S. 438, 451 (2009) (holding that in order to "avoid chilling aggressive price competition," a so-called "price-squeeze" claim must assert that the defendant monopolist reduced retail prices below its costs because "so long as [prices] . . . are above predatory levels, they do not threaten competition"); *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co*., 549 U.S. 312, 320–21 (2007) (applying the price-cost test to allegations of monopsonistic predatory bidding); *Brooke Grp.*, 509 U.S. at 222–26 (applying the price-cost test to claims that the defendant offered below-cost price cuts and volume rebates and affirming judgment as a matter of law because the plaintiff had not provided evidence that the defendant had a reasonable prospect of recoupment); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990) (holding in a Section 1, 15 U.S.C. § 1, case that low-but-above-cost prices "cannot give rise to antitrust injury" because "[l]ow prices benefit consumers regardless of how those prices are set, [] so long as they are above predatory levels"); *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 116 (1986) (observing in Section 7, 15 U.S.C. § 18, case that non-predatory price competition,

as reflected by prices that are below "market price" or even below the costs of a firm's rivals, "is

not activity forbidden by the antitrust laws").

The "economic realities" recognized in this line of binding precedent is that "[l]ow prices

benefit consumers regardless of how those prices are set, and so long as they are above predatory

levels, they do not threaten competition." *Atl. Richfield,* 495 U.S. at 340; *see also Pac. Bell*, 555

U.S. 438 at 451 (noting that "[t]o avoid chilling aggressive price competition, we have carefully

limited the circumstances under which plaintiffs can state a Sherman Act claim by alleging that

prices are too low").  These cases do not hold that a plaintiff *must* allege predatory pricing to

succeed on *any* Section 2 claim monopolization, as the Court noted.  Mem. Op. at 13.  But, when

a plaintiff, like the FTC here, alleges that a purported monopolist has excluded competition by

charging low prices, that claim can only succeed if the monopolist engaged in predatory pricing.

*See Brooke Grp.*, 509 U.S. at 222.

To be clear, *Microsoft* is also fully consistent with this line of precedent, which is why this

Court's belief that it supports the FTC's position was, respectfully, error.  The FTC's claim that

*Microsoft* held that the rule of reason applies when low prices are conditioned upon exclusivity,

*see* Resp. at 12, stretches that case far beyond its bounds.  There is a marked difference between

"confer[ring] value conditioned upon exclusivity," *id.*, which *Microsoft* addressed, and offering

low prices as part of competition; the Supreme Court has never expressed that "easy access to

IAPs' services" is always procompetitive, *id.* (citing *Microsoft*, 253 F.3d at 68).  In *Microsoft* the

Court of Appeals did exactly what the Supreme Court instructed: it applied the predatory pricing

test to Microsoft's offers of low pricing, notably dismissing the predatory pricing claims.  253 F.3d

at 68 ("The rare case of price predation aside, the antitrust laws do not condemn even a monopolist

for offering its product at an attractive price[.]").  This Court holding otherwise establishes a

substantial difference of opinion with that binding precedent. *See DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 918 (S.D. Ohio 2013) (noting "[a] substantial ground for difference of opinion exists" if "a difference of opinion exists within the controlling circuit") (internal quotation marks and citations omitted).

Contrary to the FTC's arguments, it is well recognized that *ZF Meritor LLC v. Eaton Corporation*, 696 F.3d 254 (3d Cir. 2012), represented a marked departure from the traditional application of the predatory pricing "price-cost test" to claims that a monopolist excluded competition by charging low prices. Indeed, *ZF Meritor* is the only case cited by the FTC to hold that a monopolist's alleged above-cost pricing for a single product should be assessed under the rule of reason instead of the price-cost test if that low pricing is tied to so-called "exclusivity' contracts (and the defendant's conduct includes other "non-price" elements).[6]  As the dissent in *ZF Meritor* strongly cautioned in refusing to join the majority decision: "Supreme Court precedent requires that courts exercise considerable caution before condemning above-cost pricing practices and that in a challenge to a defendant's pricing practices the *Brooke Group* price-cost test should apply and be given persuasive effect regardless of whether a plaintiff identifies non-price elements of a defendant's conduct that it alleges were anticompetitive."  696 F.3d at 325 (Greenberg, J., dissenting); *see also id.* at 311 (explaining that the "general principle that above-cost pricing practices are not anticompetitive . . . is a cornerstone of antitrust jurisprudence").

---

[6] Contrary to the FTC's confused suggestion, *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394 (3d Cir. 2016), does not represent a distinct branch of authority from *ZF Meritor*.  It simply reiterates the legal principles that *ZF Meritor* acknowledged but struggled to apply: "[W]hen pricing predominates over other means of exclusivity, the price-cost test applies.  This is usually the case when a firm uses a single-product loyalty discount or rebate to compete with similar products."  821 F.3d at 409 (citing *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 452 (6th Cir. 2007) (en banc)).  That is why, even if *ZF Meritor* did apply here, the Court's application of it to Surescripts' alleged conduct was further error.  Under that articulation of the law the price-cost test, not the rule of reason, applies.

Surescripts is not seeking to extend predatory-pricing law to cover exclusive dealing arrangements, as the FTC wrongly claims. *See* Resp. at 12. Predatory-pricing law ***already*** covers this case because the FTC is challenging Surescripts' offers of discounts and increased incentives. A substantial difference of opinion exists as to whether this Court should follow the Third Circuit in rejecting the relevant Supreme Court precedent and striking out with a new application of monopolization law. Respectfully, the Court of Appeals of this Circuit should make that decision. *United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*, 173 F. Supp. 3d 320, 323 (E.D. Va. 2016) (noting that "a novel and difficult issue" on which other circuits may be "split" and on which "the controlling circuit has not commented" constitutes a "substantial ground for disagreement") (citation omitted).

*Third*, a decision in Surescripts' favor on this issue would materially advance the ultimate termination of this lawsuit. The FTC does allege that Surescripts engaged in other conduct with regard to Allscripts and RelayHealth. But as Surescripts explained in its motion to dismiss, the FTC fails to allege any foreclosure of competition or anticompetitive effects stemming from those specific allegations, as opposed to the purported course of loyalty discount contracts. Mem. ISO Mot. to Dismiss at 34–35. Accordingly, any claims stemming from those allegations would necessary fail and need to be re-pleaded (if they even could be, given the limited foreclosure that could be allegedly caused by those limited relationships). Thus, because pricing mechanisms related to the Reserve Program are at the heart of the FTC's complaint, a decision in Surescripts' favor would dramatically advance this suit. Though it may not fully resolve the litigation,[7]

---

[7] For example, as noted in Surescripts' initial memorandum, the FTC may wish to amend its complaint if it loses on interlocutory appeal—providing even more reason to take that appeal sooner rather than later when more resources have been expended. *See* Mem. in Supp. at 14.

eliminating the FTC's core theory would dramatically lessen the stakes, lower the remaining costs of adjudication, and increase the likelihood of out-of-court resolution.[8]

## CONCLUSION

Nothing in the FTC's response unsettles the conclusion that the Court's order denying Surescripts' motion to dismiss meets every requirement laid out in 28 U.S.C. § 1292(b). Surescripts therefore respectfully requests that this Court certify its order for interlocutory review.

Dated: April 10, 2020

Respectfully submitted,

/s/ *Amanda P. Reeves*
Amanda P. Reeves (D.C. Bar 496338)
Allyson M. Maltas (D.C. Bar 494566)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: 202-637-2183
Facsimile: 202-637-2201
Email: amanda.reeves@lw.com
Email: allyson.maltas@lw.com

Alfred C. Pfeiffer, Jr. (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com

*Attorneys for Defendant Surescripts, LLC*

---

[8] The developing circumstances related to the COVID-19 epidemic may provide additional justification for interlocutory appeal. Because appellate case schedules have generally been less affected than pre-trial activities by the responsive measures imposed throughout the country, taking the opportunity to resolve these issues at the appellate level now could be a particularly efficient way to proceed.