## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 19-1080 (JDB)** |
| **SURESCRIPTS, LLC,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

On April 17, 2019, the Federal Trade Commission filed this action against Surescripts, LLC, seeking equitable relief, including a permanent injunction, and monetary relief under Section 13(b) of the FTC Act.  See Compl. for Injunctive & Other Equitable Relief [ECF No. 1] at 1, 54. Surescripts moved to dismiss the complaint, see Surescripts, LLC's Mot. to Dismiss Compl. ("Mot. to Dismiss") [ECF No. 31], and on January 17, 2020, the Court denied the motion, see FTC v. Surescripts, LLC, 424 F. Supp. 3d 92, 94–95 (D.D.C. 2020).  Surescripts now moves for the Court to amend its previous decision and certify two aspects of that decision for interlocutory review under 28 U.S.C. § 1292(b).  See Surescripts' Mot. to Amend the Court's Order Denying Surescripts' Mot. to Dismiss in Order to Certify It for Interlocutory Appeal ("Mot. to Certify") [ECF No. 56] at 1.  For the reasons explained herein, the Court concludes that this litigation does not present exceptional circumstances justifying deviation from the standard rule postponing appellate review until after entry of final judgment.  The Court will therefore deny Surescripts's motion.

## Background

The Court previously described in full the underlying facts in this case in its opinion

denying Surescripts's motion to dismiss, see Surescripts, 424 F. Supp. 3d at 95–96, and will thus reiterate only those facts most relevant to the present motion.  Surescripts is a health information technology company operating in two complementary markets, electronic prescription routing ("routing") and eligibility, collectively known as "e-prescribing."  Compl. ¶ 1.  Routing involves the transmission of prescription-related data from a prescriber to a pharmacy via the prescriber's electronic health record ("EHR") system, while eligibility involves the transmission of a patient's formulary and benefit information from a payer (normally the patient's pharmacy benefit manager ("PBM")) to a prescriber's EHR.  Id.  According to the FTC, Surescripts employs various anticompetitive measures to maintain its at least 95% share (by transaction volume) in each market. Id. ¶¶ 2–3.

Around 2009, Surescripts began offering loyalty bonuses to customers in both markets who exclusively used its information systems.  Id.  Pharmacies and PBMs would pay a reduced fee if they dealt exclusively with Surescripts, meaning that they routed "100% of [their] transactions through and only through the Surescripts network."  Id. ¶¶ 66–67.  And EHR providers received gradated incentive payments based on exclusivity in one or both markets.  Id. ¶ 77.

The FTC contends that these loyalty programs have had the effect of foreclosing "at least 70% of each market, eliminating multiple competitive attempts from other companies . . . that offered lower prices and greater innovation."  Id. ¶ 3.  In particular, the FTC claims that Surescripts's dominant position in the market makes these loyalty contracts especially effective at excluding competition because almost all market entrants must compete for customers who already use Surescripts.  Id. ¶ 32.  The FTC also alleges that Surescripts has used other anticompetitive tactics, like "threats and other non-merits based competition," to keep its customers from working with its competitors.  Id. ¶ 4.

Based on these allegations, the FTC sued Surescripts under Section 13(b) of the FTC Act, alleging that Surescripts's loyalty program, in combination with other anticompetitive measures, violated Section 2 of the Sherman Act.  Id. ¶¶ 222–31.  FTC accordingly sought equitable relief, including monetary relief and a permanent injunction preventing such practices in the future.  Id. at 54.

Surescripts moved to dismiss the FTC's complaint on two grounds.  Mot. to Dismiss ¶¶ 1–3.  First, Surescripts argued that the Court lacked subject matter jurisdiction over the request for a permanent injunction because the FTC could not establish that this case is "proper" under Section 13(b) of the FTC Act.  Id. ¶ 1; see 15 U.S.C. § 53(b) (providing that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction" (emphasis added)).  Second, Surescripts argued that the FTC's complaint failed to state a claim under Section 2 of the Sherman Act because it did not allege that the prices offered by Surescripts were predatory and failed under the rule of reason.  See Mot. to Dismiss ¶¶ 2–3.

The Court denied Surescripts's motion.  In terms of Section 13(b), the Court concluded that the statutory reference to a "proper case" was not a jurisdictional requirement, but that even if it was, the FTC had pled sufficient facts to demonstrate that their lawsuit is "proper."  Surescripts, 424 F. Supp. 3d at 96–98.  The Court explained that, although Surescripts is likely correct "that 'proper cases' is not synonymous with 'all cases'" within the FTC's administrative purview, "this case is proper" because its theory is grounded in D.C. Circuit precedent "and does not seek to rely on [the FTC's] expertise to develop the law."  Id. at 98.  As for the merits, the Court determined that, under the D.C. Circuit's decision in United States v. Microsoft Corp., 253 F.3d 34 (D.C. Cir. 2001) (en banc), "Surescripts's alleged practice of charging loyal pharmacies and PBMs less, and paying loyal EHRs greater incentives, do not need to constitute predatory pricing for Surescripts's

exclusionary practices to constitute illegal maintenance of a monopoly." Surescripts, 424 F. Supp. 3d at 102.  In alleging that Surescripts's loyalty program and other anticompetitive practices foreclosed at least 70% of each market, the FTC made out a plausible violation of Section 2 of the Sherman Act.  Id. at 102–04.

Surescripts now asks the Court to amend its previous decision, for interlocutory appellate review under § 1292(b), to certify two questions for interlocutory appellate review: "(1) whether the language and structure of Section 13(b) of the FTC Act preclude the FTC's lawsuit, and (2) whether Supreme Court precedent forecloses the FTC's argument that Surescripts'[s] low, but not 'predatory,' pricing is anticompetitive."  Mot. to Certify at 1.  Both parties have briefed the matter, and it is now ripe for resolution.

### Legal Standard

Section 1291 of Title 28 of the U.S. Code grants the courts of appeals "jurisdiction of appeals from all final decisions of the district courts."  This finality requirement "embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals."  United States v. Nixon, 418 U.S. 683, 690 (1974). The narrow exception to this finality requirement in 28 U.S.C. § 1292(b) permits an interlocutory appeal when the district court "shall be of the opinion [(1)] that [a nonfinal] order involves a controlling question of law as to which there is substantial ground for difference of opinion and [(2)] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  If the district court certifies a question for interlocutory review, the relevant court of appeals retains the "discretion" to determine whether to permit the appeal or not.  Id.  Courts of appeals construe such statutory grants of interlocutory review narrowly, "applying them only when a district court's challenged ruling might be of 'serious,

perhaps irreparable, consequence' to a litigant and therefore merit immediate review." Banks v. Office of Senate Sergeant-At-Arms & Doorkeeper of U.S. Senate, 471 F.3d 1341, 1345 (D.C. Cir. 2006) (quoting Cobell v. Kempthorne, 455 F.3d 317, 321 (D.C. Cir. 2006)).  Absent a certification by the district court, however, the court of appeals is without jurisdiction to consider the matter. See Kahl v. Bureau of Nat'l Affairs, 856 F.3d 106, 118 n.2 (D.C. Cir. 2017).

Collateral review under § 1292(b) "is meant to be applied in relatively few situations," Tolson v. United States, 732 F.2d 998, 1002 (D.C. Cir. 1984) (quotation omitted), and it is the movant's burden to demonstrate that such review is necessary, see Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, No. 1:17-cv-01451 (TNM), 2019 WL 250125, at *2 (D.D.C. Jan. 17, 2019).

"A controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." Doe 1 v. Howard Univ., Civil Action No. 17-cv-870 (TSC), 2019 WL 4860717, at *3 (D.D.C. Oct. 1, 2019) (internal quotation marks omitted).  "[A] question is controlling, even though its decision might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants." Johnson v. Burken, 930 F.2d 1202, 1206 (7th Cir. 1991).

"The threshold for establishing the 'substantial ground for difference of opinion' with respect to a 'controlling question of law' required for certification pursuant to § 1292(b) is a high one." Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp., 233 F. Supp. 2d 16, 19 (D.D.C. 2002).  A party's "[m]ere disagreement, even if vehement, with a court's ruling on a motion to dismiss does not" clear that threshold. Id. at 20 (internal quotation marks omitted).  Instead, "[a] substantial ground for difference of opinion is often established by a dearth of precedent within

the controlling jurisdiction and conflicting decisions in other circuits." APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d 90, 97 (D.D.C. 2003); see also Gov't of Guam v. United States, 950 F.3d 104, 110 (D.C. Cir. 2020) (granting the certified request for interlocutory review where "the courts of appeals [had] diverge[d]" over "at least one controlling issue of law," the resolution of which "could materially advance [the] litigation" (quotation omitted)).  But an apparent tension among authorities is not sufficient: "a court must analyze the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d 1, 5 (D.D.C. 2018) (internal quotation marks omitted).  "[A] district judge has 'unfettered discretion to deny certification of an order for interlocutory appeal even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b) are met.'" Picard v. Katz, 466 B.R. 208, 210 (S.D.N.Y. 2012) (some internal quotation marks omitted) (quoting Gulino v. Bd. of Educ., 234 F. Supp. 2d 324, 325 (S.D.N.Y. 2002)).

## Analysis

Surescripts moves the Court to certify two questions of law for interlocutory appellate review: "(1) whether the language and structure of Section 13(b) of the FTC Act preclude the FTC's lawsuit, and (2) whether Supreme Court precedent forecloses the FTC's argument that Surescripts'[s] low, but not 'predatory,' pricing is anticompetitive." Mot. to Certify at 1.  In neither instance, however, has Surescripts met its burden to demonstrate "a controlling question of law as to which there is substantial ground for difference of opinion," 28 U.S.C. § 1292(b).

### I.    Whether Section 13(b) of the FTC Act Precludes This Lawsuit

Turning first to Section 13(b), all parties appear to agree that whether this lawsuit is a "proper case" under Section 13(b) of the FTC Act is a controlling question of law, because if the

present lawsuit fails that test, then the FTC is powerless to bring it.  <u>See</u> Mem. in Supp. of Surescripts' Mot. to Amend the Court's Order ("Def.'s Mem.") [ECF No. 56-1] at 5–6; FTC's Opp'n to Surescripts's Mot. for Interlocutory Appeal ("FTC's Opp'n") [ECF No. 59] at 2–10.  The key consideration is thus whether "there is substantial ground for difference of opinion," 28 U.S.C. § 1292(b), as to whether this lawsuit is a "proper case" under Section 13(b).

Surescripts argues that there <u>is</u> substantial ground for disagreement because, in its view, Section 13(b) is open to various plausible interpretations.  Def.'s Mem. 6–10.  Surescripts points to the Court's acknowledgement that there is "considerable weight to Surescripts's argument that 'proper cases' is not synonymous with 'all cases'" (as the FTC had argued at the motion-to-dismiss phase) to show the difficulty of interpreting Section 13(b).  <u>Id.</u> at 6.  Surescripts also highlights a comment by the Court during oral argument suggesting that Section 13(b) could plausibly be read as setting forth a "parallel-proceeding" framework, where simultaneous proceedings are required at the Commission and in court.  <u>Id.</u> at 7–8; <u>see also</u> Tr. of Mot. Hr'g [ECF No. 41] at 21:6–22:7.

Although Surescripts demonstrates the difficulty in defining exactly the metes and bounds of Section 13(b) overall, it fails to show that there is substantial ground for difference of opinion on the controlling question of law <u>here</u>, namely, whether the present lawsuit is a "proper case." As the Court previously noted, its "task is not to define the term 'proper cases' for all scenarios, but to determine whether <u>this</u> case is proper."  <u>Surescripts</u>, 424 F. Supp. 3d at 98.  On that point, the Court found no significant grounds for difference of opinion.  Despite Surescripts's argument that "proper cases" were limited to straightforward violations of the FTC's substantive statutes, <u>see id.</u>, various other courts had previously concluded that "proper cases" encompassed more than just "routine" violations, <u>see id.</u> at 99 (gathering cases).  And the two authorities that Surescripts cited for its position were both readily distinguishable.  <u>Id.</u>; <u>see</u> FTC v. World Travel Vacation

Brokers, Inc., 861 F.2d 1020 (7th Cir. 1988); FTC v. Abbott Labs., Civ. A. No. 92-1364, 1992 WL 335442 (D.D.C. Oct. 13, 1993).  "In agreement with the clear weight of relevant cases," the Court concluded that the present case, which rests on legal precedent rather than the FTC's unique agency expertise, is a "proper case."  Surescripts, 424 F. Supp. 3d at 98, 100.

Surescripts fails to demonstrate that the specific question of whether this lawsuit is a "proper case"—and the Court's prior conclusion that it is—presents substantial ground for difference of opinion.  Its motion includes no new authorities supporting its view that only routine or straightforward cases are "proper cases," see Def.'s Mem. at 6–10, and as noted above, the cases it previously cited either supported the Court's conclusion or were inapposite.  Nor can Surescripts point to a total lack of precedent on the issue.  Cf. Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d 150, 155 (D.D.C. 2018) (certifying an order where there was "a complete absence of any precedent from any jurisdiction" on the controlling question of law).  The Court benefitted from prior decisions by two circuit courts and various districts courts, including two decisions from this District, see Surescripts, 424 F. Supp. 3d at 99–100, and thus did not write on a blank slate when interpreting Section 13(b).  Under these circumstances, the Court concludes that "the arguments in opposition to the challenged ruling," as presented in Surescripts's motion to dismiss, do not establish "a substantial ground for dispute."  APCC Servs., 297 F. Supp. 2d at 98.

Surescripts does attempt to raise a new argument by highlighting another interpretation of Section 13(b), floated by the Court during oral argument, that reads the statute as requiring the existence of a parallel administrative proceeding by the FTC before the agency can pursue a permanent injunction.  Def.'s Mem. at 7–10.  This reading would impose the recognized prerequisites for pursuing a temporary restraining order under Section 13(b)—(1) that there is a

present or imminent violation of a substantive law enforced by the FTC, and (2) that there is a parallel pending administrative proceeding—on the permanent injunction provision.  Id. at 8; see also FTC v. Shire ViroPharma, Inc., 917 F.3d 147, 155 (3d Cir. 2019) (explaining the two prerequisites for pursuing a temporary restraining order under Section 13(b)).  Surescripts notes that at least one court has read Section 13(b) to require that there be a present or imminent violation before the FTC can pursue a permanent injunction, see Shire ViroPharma, 917 F.3d at 155, just as there must be before the FTC can pursue temporary injunctive relief, see FTC v. Merch. Servs. Direct, LLC, No. 13-CV-0279-TOR, 2013 WL 4094394, at *3 (E.D. Wash. Aug. 13, 2013). Surescripts thus argues that the second prerequisite to a temporary injunction, a parallel administrative proceeding, should apply in the permanent injunction context as well.  See Def.'s Mem. at 8–9 (citing Shire ViroPharma, 917 F.3d at 156).

This argument for interlocutory appellate review under § 1292(b) is unavailing, however, because Surescripts not only did not advance this interpretation at the pleadings stage, but specifically disavowed it and directed the Court's attention to the separate question of what constitutes a "proper case."  See Mot. to Dismiss at 17 ("[T]he statute also provides that in 'proper cases,' the FTC may also seek a permanent injunction in federal court, without first proceeding through its administrative court."); see also Tr. of Mot. Hr'g at 18:19–19:23 (suggesting "that the FTC does not need to be undertaking a simultaneous . . . proceeding while it seeks a permanent injunction.").  Inserting new, let alone previously disavowed, arguments into a § 1292(b) motion is "a dubious practice at best," Picard, 466 B.R. at 212, because it undermines the settled principle that courts of appeals should not consider arguments that parties failed to make below, see Shedd v. Wells Fargo Bank, N.A., Civil Action 14-0275-WS-M, 2016 WL 4565775, at *4 n.6 (S.D. Ala. Aug. 31, 2016) (collecting cases).  "Section 1292(b) is not a vehicle for raising new arguments on

appeal," In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.,

No. 09 MD 2058 (PKC), 2010 WL 4237304, at *3 (S.D.N.Y. Oct. 8, 2010), as numerous courts

have recognized.   See, e.g., Smith v. Leis, 407 F. App'x 918, 927 (6th Cir. 2011) (refusing to

consider an argument not asserted before the district court); Broad v. Hitts, No. 5:08-CV-366

(CAR), 2011 WL 5546298, at *2 (M.D. Ga. Nov. 14, 2011) ("[Defendant] cannot now raise new

arguments for summary judgment in a motion for interlocutory appeal."); Lindley v. Life Inv'rs

Ins. Co. of Am., No. 08-CV-0379-CVE-PJC, 2010 WL 2465515, at *4 (N.D. Okla. June 11, 2010)

(refusing to consider a new argument as a ground to certify an interlocutory appeal where movant

failed to raise the argument previously); Official Comm. of Equity Sec. Holders of Spectrum

Jungle Labs Corp. v. Spectrum Jungle Labs Corp., Civ. No. SA:09-CV-576-XR, 2009 WL

2432163, at *5 (W.D. Tex. Aug. 5, 2009) (refusing to certify "issues on which the Court itself has

not made any definitive rulings based on full briefing and a full record").   In short, an argument

not presented by Surescripts and not relied on by this Court cannot serve as the basis for § 1292(b)

certification.   Nor can Surescripts argue that it was unaware of the holding in Shire ViroPharma,

which came out over four months before Surescripts filed its motion to dismiss; indeed, the

company cited the case for other points in its reply brief.   See Reply Mem. in Supp. of Surescripts,

LLC's Mot. to Dismiss Compl. [ECF No. 39] at 5 n.3, 8.

The Court will thus reject this late attempt to change Surescripts's approach and, as noted

above, deny the motion to certify its January 17 decision for interlocutory review on the question

whether this lawsuit is a "proper case" under Section 13(b).

## II.      Whether Non-Predatory Low Pricing Is Anticompetitive

Surescripts next argues that the Court should certify for interlocutory review whether

"Surescripts'[s] optional low pricing plan could give rise to antitrust liability even though the FTC

does not allege those prices are below cost." Def.'s Mem. at 11.  This argument, however, is largely a rehashing of the point that Surescripts made in its motion to dismiss: "[o]ptional low pricing such as that offered by Surescripts is only illegal if predatory," which the FTC did not allege.  Mot. to Dismiss at 29–30.  The Court rejected that argument because it fails to account for the specific nature of Surescripts's monopolistic position that makes its loyalty program effectively exclusionary and, therefore, an impediment to competitors entering the market.  Surescripts, 424 F. Supp. 3d at 100–101.  The Court also distinguished each of the cases that Surescripts cites in its motion and explained why "none of the authorities Surescripts cites stands for the proposition that a plaintiff must allege predatory pricing to succeed on a Section 2 claim."  Id. at 101.

Surescripts also argues that the Court relied on a minority view of predatory pricing law announced in some Third Circuit cases.  Def.'s Mem. at 12.  But while the Court's previous opinion did cite ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 281 (3d Cir. 2012), it based its ruling primarily on the D.C. Circuit's decision in Microsoft.  See Surescripts, 424 F. Supp. 3d at 101–102 ("Like the behavior at issue in Microsoft, Surescripts's alleged practice of charging loyal pharmacies and PBMs less, and paying loyal EHRs greater incentives, do not need to constitute predatory pricing for Surescripts's exclusionary practices to constitute illegal maintenance of a monopoly.").

Surescripts's argument thus boils down to a disagreement with the Court's interpretation of Microsoft.  Surescripts concedes that "Microsoft is fully consistent" with the cases that Surescripts cites regarding predatory pricing and exclusionary dealing, Reply in Supp. of Surescripts' Mot. to Amend [ECF No. 60] at 11, but contends that "there is . . . substantial ground for a difference of opinion with regard to this Court's application of Microsoft," Def.'s Mem. at 13.  This line of argument is unpersuasive.  Surescripts cites no new authority demonstrating that

the Court's reading of <u>Microsoft</u> is incorrect, and reviewing the authorities once more, the Court concludes that interlocutory appellate review is not appropriate on this issue.

As the Court noted in its prior opinion, the FTC alleges that Surescripts's loyalty program, in combination with the company's dominant monopoly in both routing and eligibility, "clearly ha[d] a significant effect in preserving its monopoly" and kept usage of any competing information system "below the critical level necessary for [it] . . . to pose a real threat" to Surescripts's monopoly. <u>Surescripts</u>, 424 F. Supp. 3d at 102 (quoting <u>Microsoft</u>, 253 F.3d at 71). This conclusion follows straightforwardly from the D.C. Circuit's opinion in <u>Microsoft</u>, and Surescripts's mere disapproval of the Court's prior ruling does not establish the substantial ground for disagreement necessary under § 1292(b). <u>See</u> <u>Nat'l Energy Policy Dev. Grp.</u>, 233 F. Supp. 2d at 20 ("Mere disagreement, even if vehement, with a court's ruling on a motion to dismiss does not establish a 'substantial ground for difference of opinion' sufficient to satisfy the statutory requirements for an interlocutory appeal." (quotation omitted)). The Court thus will not certify its previous decision for interlocutory review on this question.

## Conclusion

For all the foregoing reasons, the Court will deny [56] Surescripts's request for certification under § 1292(b). A separate order will be issued on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>May 21, 2020</u>