UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>   Plaintiff,<br><br>  v.<br><br>SURESCRIPTS, LLC,<br><br>   Defendant. | Case No.: 19-cv-1080 (JDB) |

**DEFENDANT SURESCRIPTS' STATUS REPORT REGARDING THE IMPACT OF
THE SUPREME COURT'S DECISION IN *LIU v. SEC***

The Court asked the Parties to provide their views on "what bearing, if any, the Supreme Court's decision in *Liu v. SEC* . . . has on the case." Min. Order (June 22, 2020) (citing *Liu v. SEC*, 140 S. Ct. 1936 (2020)). At issue in *Liu* was whether the SEC can obtain disgorgement pursuant to a statute that provides it with the authority to seek "any equitable relief." *See* 15 U.S.C. § 78u(d)(5). Since this Court's Minute Order, the Supreme Court granted certiorari in *FTC v. Credit Bureau Center*, LLC, 937 F.3d 764 (7th Cir. 2019) and *FTC v. AMG Capital Management, LLC*, 910 F.3d 417 (9th Cir. 2018). Those cases concern the same issue as this case: Whether Section 13(b) of the FTC Act, which explicitly authorizes the FTC to seek injunctive relief, also impliedly provides the FTC with disgorgement authority. *See* 15 U.S.C. § 53(b). The Supreme Court will now address that issue.[1] With that decision forthcoming, *Liu* remains relevant to this case in three respects.

First, although the Supreme Court will have much more to say on the point when it decides *Credit Bureau* and *AMG*, *Liu*'s analysis of when disgorgement relief is appropriate already casts further doubt over whether Section 13(b) authorizes disgorgement. In *Liu*, the issue was whether a statute permitting "any equitable relief that may be appropriate or necessary"

---

[1] Surescripts continues to believe that, at a practical level, this is a dispositive issue because Surescripts expects the case will likely settle if the FTC is found to lack that authority. Tellingly, although Surescripts has made this representation on four prior occasions, the FTC has never refuted it. *See* Tr. of Mot. Hr'g (Nov. 19, 2019) at 79:19–80:5 (explaining that disgorgement "is the trigger mechanism and . . . why we care"); Surescripts' Resp. to the Court's Min. Order at 2 (Jan. 10, 2020), ECF No. 42 (noting that "[h]ad the FTC only demanded injunctive relief, it is very likely that this litigation would never have commenced" because Surescripts "would have entered into a consent order that governed its subsequent conduct and settled with the FTC"); Mem. in Support of Surescripts' Mot. to Amend the Court's Order Den. Its Mot. to Dismiss in Order to Certify it for Interlocutory Appeal at 10 (Mar. 6, 2020), ECF No. 56-1 (predicting that "without the [FTC's] ability to seek monetary relief, the case may settle"); Reply in Support of Surescripts' Mot. to Amend the Court's Order Den. Its Mot. to Dismiss in Order to Certify it for Interlocutory Appeal at 8 (April 10, 2010) ECF No. 60 (stating "if . . . the FTC cannot seek disgorgement . . . a full settlement of the whole dispute is likely").

supplied a basis for the SEC to seek disgorgement. *Liu*, 140 S. Ct. at 1940 (citing 15 U.S.C. § 78u(d)(5)). The Court reasoned that "[i]n interpreting statutes . . . that provide for 'equitable relief,' this Court analyzes whether a particular remedy falls into 'those categories of relief that were *typically* available in equity.'" *Id*. at 1942 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). Because disgorgement was a form of "equitable relief" that Congress contemplated when it enacted the statute at issue, *Liu* held that the statute authorized the SEC to seek a disgorgement. *Id.* at 1947.

Turning to this case, the FTC cannot point to any statutory language that authorizes it to seek disgorgement because it does not exist, and it most certainly cannot point to anything favorable on this point in *Liu*. Instead, like in *Credit Bureau* and *AMG*, the FTC persists in arguing that because Section 13(b) provides it with the authority to seek *injunctive* relief, Section 13(b) also impliedly provides the FTC with *disgorgement* authority. The law does not allow that. *See Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210–11 n.1 (2002) (noting that "statutory reference to [injunction] must, absent other indication, be deemed to contain the limitations upon its availability that equity typically imposes" because otherwise "a statutory limitation to injunctive relief would be meaningless, since any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction"). *Liu*'s holding is relevant here because it confirms once again that when Congress wants to provide the full array of equitable relief—as the FTC wishes to "imply" here—it knows how to do so. It did not do that in the FTC Act. If anything, *Liu*'s reliance on a broad grant of equitable relief as a basis for finding disgorgement confirms that Congress's failure to explicitly provide equitable relief in the FTC Act is fatal to the FTC's claim.

Second, notwithstanding the above, *Liu*'s holding that that an agency's disgorgement calculation cannot "exceed a wrongdoer's net profit" has significant consequences for the scope of the FTC's potential claim of disgorgement here. *Liu*, 140 S. Ct. at 1940. Following *Liu*, if the FTC were to show wrongful conduct, it will have the burden of calculating a justifiable disgorgement amount that subtracts all "legitimate expenses"—which are the expenditures that "have value independent of fueling" the conduct at issue. *Id*. at 1950; *see also SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989) (noting a governmental agency has the burden to justify its disgorgement calculation). This means the FTC will have to undertake the complex process of teasing out which income and expenses were tied to the wrongful conduct it can prove, and not merely usual and legitimate business expenses. Surescripts has no reason to believe the FTC's current disgorgement demand takes into account this assumption.

Third and relatedly, *Liu* calls into question whether the FTC's practice of collecting disgorged funds and depositing some or all of them into the U.S. Treasury is permissible. *See* Press Release, *FTC Settlement of Cephalon Pay for Delay Case Ensures $1.2 Billion in Ill-Gotten Gains Relinquished* (May 28, 2015), www.ftc.gov/news-events/press-releases/2015/05/ftc-settlement-cephalon-pay-delay-case-ensures-12-billion-ill (noting that funds obtained in a settlement pursuant to a claim for equitable monetary relief and which cannot be paid to purchasers "will be paid to the U.S. Treasury"). The statute at issue in *Liu* authorized the SEC to seek "equitable relief" that "may be appropriate or necessary for the benefit of investors." § 78(d)(5). The Court observed that "[i]t is an open question" whether the SEC's "practice of depositing disgorgement funds with the Treasury . . . where it is infeasible to distribute the collected funds to investors" satisfies the requirement of benefiting investors with the disgorgement funds. *Liu*, 140 S. Ct. at 1948. But at the very least the "remedy must do more

than simply benefit the public at large by virtue of depriving a wrongdoer of ill-gotten gains." *Id.*

Here, of course, there is no statute providing for equitable monetary relief whatsoever. Therefore, unlike in the SEC context, there is not a standard for where disgorgement funds should go. Nevertheless, *Liu*'s suggestion that those funds should not simply be given to the public at-large underscores that the FTC carries the burden of identifying precisely who was harmed, by how much, and the ways the disgorged funds will flow to those who are harmed. Surescripts believes that this too is not a factor that the FTC has yet considered in its disgorgement demand, though it will have to account for it at a later date.

Dated: July 13, 2020

Respectfully submitted,

*/s/ Amanda P. Reeves*
Amanda P. Reeves (D.C. Bar 496338)
Allyson M. Maltas (D.C. Bar 494566)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2183
Facsimile: (202) 637-2201
Email: amanda.reeves@lw.com
Email: allyson.maltas@lw.com

Alfred C. Pfeiffer, Jr. (*appearing pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: al.pfeiffer@lw.com

*Attorneys for Defendant Surescripts, LLC*