# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FEDERAL TRADE COMMISSION**

                 Plaintiff,

    v.

**SURESCRIPTS, LLC**

                Defendant.

Case No.: 1:19-cv-01080

Judge John D. Bates

## SURESCRIPTS, LLC'S POSITION REGARDING MOOTNESS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

    I.     THE FTC'S COMPLAINT, ALLEGATIONS, AND PROPOSED
          RELIEF .........................................................................................................2

    II.    SURESCRIPTS' LOYALTY PROGRAMS HAVE ENDED ................................3

ARGUMENT ..........................................................................................................................5

    I.     THERE IS NO LONGER A LIVE CASE OR CONTROVERSY .........................5

    II.    SURESCRIPTS' ENDING OF THE LOYALTY PROGRAMS IS
          CLEAR, IRREVOCABLE, AND NOT LIKELY TO LEAD TO
          RECURRENCE ...............................................................................................7

    III.   THEORETICAL REMEDIES ARE INSUFFICIENT TO CREATE A
          LIVE ISSUE AND RESUSCITATE A MOOT CASE ..........................................9

          A.    The FTC Cannot Rely On A Catch-All Request To Defeat
               Mootness ...........................................................................................9

          B.    The FTC's Newly Asserted Remedy Requests Cannot Be the Basis
               for a Live Case or Controversy .............................................................12

               1.    The FTC Cannot Obtain Its Desired Forced Sharing
                      Arrangement Because Surescripts Has Not Previously
                      Engaged In The Type Of Network Sharing With Rivals
                      That The FTC Envisions ............................................................12

               2.    The FTC Limited Its Claims To Routing And Eligibility,
                      and Its Theorized Remedies Related To Other Products
                      Rest On Speculative Contingencies ............................................15

    IV.   POTENTIAL SETTLEMENT CONFERENCE...................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
  827 F.3d 100 (D.C. Cir. 2016) ...................................................................5

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ..............................................................................5, 7, 8, 11

*Am. Bar Ass'n v. FTC*,
  636 F.3d 641 (D.C. Cir. 2011) ...................................................................5

*Am. Fed'n of Gov't Emps., AFL-CIO v. Brown*,
  866 F. Supp. 16 (D.D.C. 1994) ...................................................................7

*AMG Cap. Mgmt., LLC v. FTC*,
  ___ U.S. ___, 141 S. Ct. 1341 (2021) ..............................................................1, 9

*Arizonans for Off. Eng. v. Arizona*,
  520 U.S. 43 (1997) ...................................................................................5, 10

*Bain v. Cal. Tchrs. Ass'n*,
  891 F.3d 1206 (9th Cir. 2018) ...................................................................10

*Board of License Commissioners of Town of Tiverton v. Pastore*,
  469 U.S. 238 (1985) ...................................................................................16

*Cierco v. Lew*, 190 F. Supp. 3d 16 (D.D.C. 2016),
  *aff'd on other grounds sub nom. Cierco*, 857 F.3d 407 ....................................10, 12

*Cierco v. Mnuchin*,
  857 F.3d 407 (D.C. Cir. 2017) ...................................................................9

*Clarke v. United States*,
  915 F.2d 699 (D.C. Cir. 1990) ...................................................................15

*Covad Communications Co. v. Bell Atlantic Corporation*,
  398 F.3d 666 (D.C. Cir. 2005) ...................................................................14

*Dean v. Blumenthal*,
  577 F.3d 60 (2d Cir. 2009) ...........................................................................7

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
  542 U.S. 155 (2004) ...................................................................................10

*Four Corners Nephrology Associates, P.C. v. Mercy Medical Center of Durango*,
582 F.3d 1216 (10th Cir. 2009) ...............................................................................14

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)......................................................................................................7

*Golden v. Zwickler*,
394 U.S. 103 (1969)....................................................................................................16

*Hall v. Beals*,
396 U.S. 45 (1969)......................................................................................................16

*Isenbarger v. Farmer*,
463 F. Supp. 2d 13 (D.D.C. 2006) ..............................................................................9

*Larsen v. U.S. Navy*,
525 F.3d 1 (D.C. Cir. 2008) .........................................................................................6

*Mass. v. Microsoft Corp.*,
373 F.3d 1199 (D.C. Cir. 2004) .................................................................................12

*Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*,
397 F.3d 77 (2d Cir. 2005)..........................................................................................10

*Mayfield v. Dalton*,
109 F.3d 1423 (9th Cir. 1997) ....................................................................................16

*McBryde v. Comm. to Review Cir. Council Conduct & Disability Orders of the Jud. Conf. of the U.S.*,
264 F.3d 52 (D.C. Cir. 2001) .......................................................................................5

*Midcoast Fisherman's Ass'n v. Blank*,
948 F. Supp. 2d 4 (D.D.C. 2013) ................................................................................5

*NBC-USA Hous., Inc., Twenty-Six v. Donovan*,
674 F.3d 869 (D.C. Cir. 2012) .....................................................................................6

*Novell, Inc. v. Microsoft Corp.*,
731 F.3d 1064 (10th Cir. 2013) ..................................................................................13

*People for the Ethical Treatment of Animals v. United States Dep't of Agric. & Animal & Plant Health Inspection Serv.*,
918 F.3d 151 (D.C. Cir. 2019) ..............................................................................8, 9

*Schell v. OXY USA Inc.*,
814 F.3d 1107 (10th Cir. 2016) ...................................................................................6

*Spencer v. Kemna*,
523 U.S. 1 (1998)......................................................................................................5, 6

*Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*,
  815 F.2d 1435 (11th Cir. 1987) ............................................................................15

*Thomas R.W., By & Through Pamela R. v. Mass. Dep't of Educ.*,
  130 F.3d 477 (1st Cir. 1997) ................................................................................10

*United States v. Concentrated Phosphate Export Ass'n*,
  393 U.S. 199 (1968).................................................................................................7

*United States v. Mercy Health Services*,
  107 F. 3d 632 (8th Cir. 1997) ...............................................................................11

*United States v. Mercy Health Servs.*,
  Case No. 94-cv-1023 (N.D. Iowa), ECF No. 1 ....................................................11

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004)..........................................................................................13, 14

*Wagschal v. Skoufis*,
  442 F. Supp. 3d 612 (S.D.N.Y. 2020).....................................................................8

## OTHER AUTHORITIES

Herbert Hovenkamp & Phillip E. Areeda, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (Fourth & Fifth Editions 2018-2022) ........................................................13

Phillip Areeda, *Essential Facilities: An Epithet in Need of Limiting Principles*, 58 Antitrust L.J. 841 (1989)................................................................................................................13

## PRELIMINARY STATEMENT

The case that the FTC brought in 2019 no longer exists.  Four years ago, when the FTC filed this action, it sought two remedies: (1) an award of equitable monetary relief, and (2) an injunction preventing Surescripts from using certain types of provisions in its routing and eligibility contracts.  The Supreme Court took the first form of relief off the table two years ago when it held that the FTC cannot seek equitable monetary relief under Section 13(b), which is the statute the FTC uses to prosecute Surescripts in this case.  *See AMG Cap. Mgmt., LLC v. FTC*, ___ U.S. ___, 141 S. Ct. 1341, 1347 (2021).  And, although Surescripts long ago stopped enforcing the challenged contractual provisions, it has now completed the process of removing or rescinding the challenged provisions from its routing and eligibility contracts.  On top of that, Surescripts stands ready to execute an irrevocable covenant stating that it will not re-install any such provisions in routing and eligibility contracts in the future.  In short, recent events have now given the FTC the precise relief it sought four years ago when it asked this Court for an injunction.

That begs the obvious question:  *Why are we still here?*  Supreme Court precedent is clear that courts lack jurisdiction under Article III to decide cases once there is no longer a live issue, rendering the case moot.  The FTC offers two theories for why—after having received everything it asked for and is permitted to have—this matter should still occupy the time of the Court, Surescripts, and the many third parties involved in this case.  Neither is valid.

First, the FTC leans on a mistaken understanding of mootness.  It argues that this case cannot be moot because Surescripts voluntarily removed or rescinded its loyalty provisions, rather than being ordered to do so.  That is wrong.  The Supreme Court has repeatedly stated that a case can become moot—*even with voluntary cessation*—if subsequent events made clear that the allegedly wrongful behavior could not reasonably be expected to recur.  Surescripts' multi-year

commitment to removing or rescinding its loyalty provisions, paired with its commitment to execute a binding covenant, provides that assurance.

Second, the FTC spins hypotheticals in an effort to maintain its case now that the facts have changed. Relying on the Complaint's broad catch-all request for any "other such equitable relief . . . the Court finds necessary[,]" Compl., ECF No. 1, § IX, the FTC posits that the Court might choose to impose any manner of imaginative relief. That path runs into multiple problems. For starters, courts have consistently criticized this sort of eleventh hour reliance on types of relief not set out in the Complaint, solely for the purposes of avoiding mootness. Additionally, the FTC cannot avoid mootness by seeking remedies in markets outside the bounds of its Complaint. Finally, the FTC's primary wish-list item—forcing Surescripts to enter in to a price-regulated compulsory sharing of its network with all comers—runs headlong into decades of Supreme Court precedent, which prohibits any such order.

We are therefore left with a situation where the FTC has received all of the relief it is entitled to under the Complaint. That is the hornbook definition of a moot case.

## FACTUAL BACKGROUND

## I.   THE FTC'S COMPLAINT, ALLEGATIONS, AND PROPOSED RELIEF

The FTC filed its Complaint in this case in April 2019, alleging that Surescripts illegally monopolized the markets for two separate products, routing and eligibility, by offering customers contracts that offered a lower per-transaction price or an incentive payment if those customers were "loyal" to Surescripts. Compl., ECF No. 1, ¶¶ 66–78, 109.[1] The FTC claims that because "nearly all" of Surescripts' customers agreed to loyalty-based price incentives, *id.* ¶¶ 172–74,

---

[1] Routing is the transmission of prescription and prescription-related information between a prescriber and a pharmacy. Compl., ECF No. 1, ¶ 1. Eligibility is the transmission of a patient's benefit information from a payer to a prescriber's electronic health record provider. *Id.*

potential competitors were allegedly foreclosed from entering the market, *id.* ¶ 175, and as a result customers allegedly paid a higher net price, *id.* ¶ 187.   While the FTC acknowledged that Surescripts offers other products to customers, *id.* ¶¶ 122, 200, 205–08, its Complaint only claimed that Surescripts violated the antitrust laws with regard to routing and eligibility, *id.* ¶¶ 222–26 (alleging monopolization of routing); *id.* ¶¶ 227–31 (alleging monopolization of eligibility).   It confirmed that specific view of the relevant markets in its recent motion for partial summary adjudication.   Thus, it is beyond dispute that the FTC claims antitrust violations only in those two product markets.

The FTC sought the following relief: (1) a declaratory judgment "[t]hat Surescripts's course of conduct violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)[,]" (2) an injunction to "permanently enjoin [Surescripts] from engaging in similar and related conduct in the future[,]" and (3) "other such equitable relief, including equitable monetary relief, as the Court finds necessary to redress and prevent recurrence of Defendants' [sic] violations of Section 5(a) of the FTC Act[.]"  Compl., ECF No. 1, § IX.

## II.   SURESCRIPTS' LOYALTY PROGRAMS HAVE ENDED

Surescripts has always been willing to end the use of its loyalty programs, and has said so to the FTC during the pre-complaint investigation and again during the litigation of this case.[2]  And beginning in 2019, Surescripts began the process of formally ending its loyalty programs and removing and rescinding the related contractual provisions.

---

[2] As Surescripts most recently noted in its Motion for Summary Judgment briefing: "There is nothing to be gained even if Surescripts were to be found liable. The Supreme Court has held the FTC cannot seek monetary relief resulting in the voluntary dismissal of the disgorgement claims. As to the injunctive claims, Surescripts already announced back in April 2019 that it would not enforce the loyalty provisions for pharmacies and PTVs, and has represented to this Court and the FTC time and again that it will resolve this lawsuit by discontinuing the programs for EHRs and PBMs as well."  Memorandum of Points and Authorities in Support of Surescripts, LLC's Motion for Summary Judgment, ECF No. 162-1 at 4 n.1.

As the attached Declaration of Katie Felder, Associate General Counsel of Surescripts, further details, those efforts are now complete.  These efforts have encompassed:

- Since April 2019, Surescripts has not included any loyalty program terms or requirements in new or revised pharmacy or pharmacy technology vendor ("PTV") contracts.  Declaration of Katie Felder ("Felder Decl.") ¶¶ 4–6.  This encompasses any so-called "clawback provisions" associated with loyalty discounts.

- In April 2019, Surescripts sent letters to its directly connected pharmacy and PTV partners announcing that it was rescinding any remaining loyalty terms in its contracts and waiving enforcement of those terms.  *Id*. ¶ 5.

- Surescripts sent letters to its EHR partners in 2022, similarly removing all relevant loyalty provisions and replacing any applicable loyalty incentive programs with terms that pay incentives without requiring loyalty.  *Id*. ¶¶ 11–15.

- Since many pharmacy benefits manager ("PBM") agreements were unique to each contract partner, Surescripts has undertaken a four-year effort to remove or rescind loyalty provisions from PBM contracts whenever a renegotiation arose.  *Id*. ¶ 8.  That has led to a point where only two PBM customers currently have legacy contracts that still contain loyalty terms and requirements.  *Id*. ¶ 9.  Even those provisions are not operative, though, as Surescripts has already formally rescinded the loyalty terms in both contracts through letters to both entities.  *Id*. ¶¶ 5, 10.

Surescripts' routing and eligibility contracts do not  include operative provisions related to loyalty.  And in the process of removing and rescinding those provisions, Surescripts created binding contractual obligations stating that it would not use those provisions going forward.  *Id*. ¶ 10.  Surescripts is also prepared to execute an irrevocable covenant stating that it will not utilize

or enforce loyalty or exclusivity provisions in its routing and eligibility contracts at any point in the future. *Id.* ¶ 17. In short, Surescripts' use of loyalty programs in routing and eligibility—the entire basis and sole focus on the FTC's claims and requested relief—have now fully ended without any reasonable expectation of recurrence.

## ARGUMENT

### I.    THERE IS NO LONGER A LIVE CASE OR CONTROVERSY

Article III of the Constitution "limits federal courts to deciding actual, ongoing controversies." *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 105 (D.C. Cir. 2016) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997)). This means that, "throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quotation marks omitted). Generally, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Midcoast Fisherman's Ass'n v. Blank*, 948 F. Supp. 2d 4, 7 (D.D.C. 2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

"If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." *McBryde v. Comm. to Review Cir. Council Conduct & Disability Orders of the Jud. Conf. of the U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001). Likewise, if the original controversy is no longer active, then the court's jurisdiction is eliminated, because "there is nothing for [the court] to remedy, even if [it] were disposed to do so." *Spencer*, 523 U.S. at 18.

That is precisely what has occurred here.  Events during the past four years have overtaken this litigation.  The FTC's requested relief has already occurred.  And there is simply no longer a legally cognizable controversy that requires remedy.  As a result the case is moot as there is no live issue for the court to decide.  *See id.* at 7.

***First***, the FTC does not appear to claim that it can avoid mootness via its request for a declaratory judgment "[t]hat Surescripts's course of conduct violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)[.]"  Compl., ECF No. 1, § IX(1).  That is the right call because the cessation of the loyalty provisions that are the basis for the FTC's case means there is no longer an ongoing course of conduct this Court can declare unlawful: such a decision "would accomplish nothing— amounting to exactly the type of advisory opinion Article III prohibits."  *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (holding that a declaratory judgment regarding an already-withdrawn policy was prohibited by Article III).

For this reason, courts in this Circuit find cases moot when the plaintiff's sole request is a declaration regarding conduct that has ceased.  *See NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012) ("Where an intervening event renders the underlying case moot, a declaratory judgment can no longer 'affect[] the behavior of the defendant towards the plaintiff,' and thus affords the plaintiffs no relief whatsoever[.]"); *see also Schell v. OXY USA Inc.*, 814 F.3d 1107, 1115 (10th Cir. 2016) ("Seeking to litigate this ostensible controversy . . . is the very sort of speculative, 'hypothetical' factual scenario that would render such a [declaratory] judgment a prohibited advisory opinion.") (internal citation and quotations omitted).

***Second***, a permanent injunction preventing Surescripts "from engaging in similar and related conduct in the future[,]" Compl., ECF No. 1, § IX(2), would be redundant and unnecessary. Surescripts ended its loyalty provisions and ensured that its customers had contractual recourse to

prevent Surescripts from enforcing them.  *See* Felder Decl. ¶¶ 5–15.  Further, Surescripts is ready, willing and able to execute a covenant irrevocably agreeing not to employ loyalty programs of the nature that the FTC complains of here now or in the future.  Taken together, these actions provide the FTC with the same relief.  *See Am. Fed'n of Gov't Emps., AFL-CIO v. Brown*, 866 F. Supp. 16, 19 (D.D.C. 1994) (holding that because the "representations made by defendants in this action constitute the relief requested by the plaintiffs[,]" the "primary relief plaintiffs have requested" had occurred and the case was moot).

## II.  SURESCRIPTS' ENDING OF THE LOYALTY PROGRAMS IS CLEAR, IRREVOCABLE, AND NOT LIKELY TO LEAD TO RECURRENCE

A litigant's voluntary cessation of the challenged conduct renders the case moot when "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur*." Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc*., 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)); *Nike*, 568 U.S. at 92 ("That is the question the voluntary cessation doctrine poses: Could the allegedly wrongful behavior reasonably be expected to recur?").  For three reasons, there is no reasonable expectation that Surescripts will re-implement its routing or eligibility loyalty programs.

*First*, as Surescripts has rescinded the loyalty terms from contracts with routing and eligibility partners, it has expressly promised that the recission is binding and that the contract partners may rely on the amendment.  Felder Decl. ¶¶ 5, 10.

*Second*, this was not a simple act that could easily be undone: the amount of time and effort expended to end the loyalty programs further demonstrates that there is no reasonable expectation of recurrence.  Here, Surescripts has been in the process of removing or rescinding loyalty provisions from its contracts for four years—including the renegotiation and revision of hundreds of agreements.  Felder Decl. ¶¶ 5–15.  This strengthens the claim of mootness by voluntary

cessation.  For instance, the Second Circuit has noted that a case of voluntary cessation was more creditable when the defendant had not engaged in the conduct in four years.  *Dean v. Blumenthal*, 577 F.3d 60 (2d Cir. 2009);  *see also e.g.*, *Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 621–22 (S.D.N.Y. 2020) (holding the case was moot, in part, because the plaintiff had not engaged in the challenged conduct for nine months).  That prolonged effort and the passage of time since ending the PTV and pharmacy programs are clear and credible indications that the conduct is unlikely to recur.

*Third*, Surescripts is willing to go further by executing an irrevocable covenant that it will not in the future offer or enforce loyalty provisions in any routing and eligibility contracts.  Felder Decl. ¶ 17.  The Supreme Court has recognized that when a defendant submits a covenant irrevocably promising that it will not revive the challenged conduct, that is sufficient proof that the conduct is not reasonably likely to recur, thus making the matter moot.  *Nike*, 568 U.S. at 93.  In *Nike*, a footwear designer brought a trademark action, seeking a declaratory judgment that Nike's mark was invalid.  In response, Nike submitted an executed covenant not to sue for any possible alleged trademark infringement.  *See* Joint Appendix 95a, *Already, LLC v. Nike, Inc.*, No. 11-982 (S. Ct. Aug. 16, 2012).  Assessing the case for mootness, the Court concluded that "[t]he breadth of this covenant suffices to meet the burden imposed by the voluntary cessation test." *Nike*, 568 U.S. at 93.

The D.C. Circuit has similarly applied this concept, accepting equivalent covenants from the defendant as sufficient under the voluntary cessation doctrine.  For instance, in *People for the Ethical Treatment of Animals v. United States Dep't of Agric. & Animal & Plant Health Inspection Serv.,* an animal rights group sued the USDA under the Freedom of Information Act for the USDA's failure to publicly display certain types of government records.  918 F.3d 151 (D.C. Cir.

2019).  The D.C. Circuit affirmed the district court's dismissal of the case, holding that a "declaration by (or on behalf of) [the defendant] that [it] intends to post documents in the inspection reports and entity lists categories on an ongoing basis will moot [the plaintiff's] claims."  *Id.* at 159; *see also Cierco v. Mnuchin*, 857 F.3d 407, 415 (D.C. Cir. 2017) (accepting government's declaration that challenged notices had been withdrawn with no intention to reissue).  Further, in *Isenbarger v. Farmer*, a Lieutenant Colonel in the Army sought an order requiring the military to correct the official listing of when his active duty service obligation would conclude, as his order had mistakenly extended he obligation by three extra years.  463 F. Supp. 2d 13, 17 (D.D.C. 2006) (Bates, J.).  The Army recognized the error, and had an Army Major execute a statement saying the Army would not hold the Lieutenant Colonel to the mistaken date.  *Id*.  In part because of this statement on behalf of the defendant, this Court rejected arguments that "other future events could theoretically affect" the allegedly aggrieved party and concluded that the case was moot, even with voluntary cessation.  *Id*. at 23.

In short, a defendant's sworn, filed covenant that it will not repeat the conduct at issue is sufficient to satisfy the voluntary cessation doctrine, and Surescripts is willing to provide one.

## III.   THEORETICAL REMEDIES ARE INSUFFICIENT TO CREATE A LIVE ISSUE AND RESUSCITATE A MOOT CASE

### A.    The FTC Cannot Rely On A Catch-All Request To Defeat Mootness

The FTC's Complaint includes a vague "catch-all" request that the Court order "other such equitable relief, including equitable monetary relief,[3] as the Court finds necessary to redress and

---

[3] Of course, the FTC is not permitted to request the requested "equitable monetary relief."  After the FTC filed the Complaint against Surescripts, the Supreme Court held that the FTC is not permitted to seek damages in cases under Section 13(b) of the FTC Act, as is the case here. *AMG Cap. Mgmt., LLC v. FTC*, ___ U.S. ___, 141 S. Ct. 1341, 1347 (2021).  We understand that the FTC concedes it is not entitled to the "equitable monetary relief" that it requests in the complaint.

prevent recurrence of Defendants' [sic] violations of Section 5(a) of the FTC Act[.]"  Compl., ECF No. 1, § IX(3).  But the law is clear that a moot case cannot survive on vague prayers for relief coupled with requests for imaginative remedial schemes.[4]

The Supreme Court has specifically cautioned federal courts to be wary of requests "extracted late in the day from [a] general prayer for relief and asserted solely to avoid otherwise certain mootness."  *Arizonans for Off. Eng.*, 520 U.S. at 71.  Federal courts have heeded that warning.  *Bain v. Cal. Tchrs. Ass'n*, 891 F.3d 1206, 1212 (9th Cir. 2018) (rejecting a plaintiff's attempt "to maintain a live controversy [by] . . . bootstrapping restitution into an ancillary prayer for relief"); *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 90 (2d Cir. 2005) (dismissing a claim as moot, rejecting the plaintiff's argument that "her general claim for 'other such relief as the Court deems appropriate' is sufficiently expansive to include a compensatory education award"); *Thomas R.W., By & Through Pamela R. v. Mass. Dep't of Educ.*, 130 F.3d 477, 480 (1st Cir. 1997) (dismissing a case as moot even though the complaint included "the general prayer for 'such further relief as this court deems just and proper'"); *Cierco v. Lew*,

---

[4] The FTC has previously informed the court that "the parties do not currently agree on the relief that is needed to protect the public and redress the anticompetitive harm."  FTC Resp. Br., ECF No. 159, at 3 n.1.  The FTC appears to believe that even if it has received the relief it sought in its complaint, the case cannot be moot if its Commissioners would still like to impose additional remedial schemes.  *See id.*  For this proposition, the FTC included a *cf* citation to the Supreme Court's decision in *F. Hoffmann-La Roche Ltd. v. Empagran S.A.* for the quote that "[a] Government plaintiff . . . must seek to obtain the relief necessary to protect the public from further anticompetitive conduct and to redress anticompetitive harm."  542 U.S. 155, 170 (2004).  But *F. Hoffmann-LaRoche* was not a case about mootness, and is not relevant to the issue at hand.  In *F. Hoffmann-LaRoche*, the Court was tasked with deciding whether the exceptions to the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA")—which otherwise barred Sherman Act claims involving trade or commerce with foreign nations—permitted a Sherman Act claim in that particular case.  The FTC quotes from the Court's analysis of cases that had allowed Sherman Act claims to go forward because the anticompetitive conduct at issue allegedly harmed both American and foreign entities.  The Government's ability to seek particular remedies in potentially moot domestic antitrust actions was not at issue in that case.  *F. Hoffmann-LaRoche* is not instructive for a mootness analysis.

190 F. Supp. 3d 16, 25 (D.D.C. 2016) (dismissing a case as moot even though the plaintiffs' complaint included "a general, catch-all request for any other relief deemed 'just and proper'"), *aff'd on other grounds sub nom. Cierco*, 857 F.3d 407.

In this vein, courts in antitrust cases have applied the concept that a plaintiff cannot overcome mootness simply by raising new, alternative remedial schemes that it would like the court to impose. In *United States v. Mercy Health Services*, for example, the Antitrust Division of the Department of Justice sought to block a merger under Section 7 of the Clayton Act. 107 F. 3d 632, 636 (8th Cir. 1997). The Government's Complaint asked that "preliminary and permanent injunctions be issued preventing and restraining" the merger. *See United States v. Mercy Health Servs.*, Case No. 94-cv-1023 (N.D. Iowa), ECF No. 1 at 8–9. When the parties voluntarily abandoned the merger, the Government asked the court to issue an injunction preventing the parties from ever pursuing a merger in the future. And, just as it does here, the Government relied on its catch-all request for relief at the end of its complaint, asking for "such other relief as the Court may deem just and proper." *Id*. at 9. The court dismissed the Government's case as moot, stating that "the United States has been given all of the relief it has sought by its party opponents' decision to abandon the merger" and that "the United States has no continuing stake in this litigation." *Mercy Health Servs.*, 107 F. 3d at 637. The Supreme Court's decision in *Nike* is also instructive. There, the Court found that because Nike met its burden under the voluntary cessation doctrine by taking steps like signing a covenant not to sue over the alleged trademark infringement, the case was moot without the plaintiff being entitled to additional relief like a declaratory judgment. 568 U.S. at 98; *see also See* Joint Appendix 45a, *Already, LLC v. Nike, Inc*., No. 11-982 (S. Ct. Aug. 16, 2012) (including, as a catch-all at the end of plaintiff's complaint, a request for "[s]uch other and further relief as this Court deems just and proper").

**B.** **The FTC's Newly Asserted Remedy Requests Cannot Be the Basis for a Live Case or Controversy**

When pressed to identify exactly what other types of "necessary" relief the FTC seeks in this case, it has identified three amorphous categories: (i) "Relief to restore competitive conditions by affirmatively requiring Surescripts to open the market to potential competitors"; (ii) "Prospective relief to prohibit Surescripts from entering into other types of contractual terms"; and (iii) "Prospective relief to prohibit Surescripts from using loyalty provisions or similar exclusionary devices for its other products[.]"  ECF No. 170 at 4.  But even if there otherwise remained a live controversy regarding the FTC's Complaint and it fully prevailed on all its claims, it could not achieve these remarkably expansive remedies. Accordingly, these additional requests are not sufficient to create jurisdiction for an otherwise moot case.

To be clear, the FTC did not set forth any of these new "requests" in its original complaint, which itself renders these requested remedies insufficient to defeat mootness.  *See Cierco*, 190 F. Supp. 3d at 26 (dismissing a claim after criticizing the plaintiff for "moving the goalpost in an effort to avoid mootness").  But, as discussed below, each proposed item of relief would be independently improper, even if previously announced.

**1.** **The FTC Cannot Obtain Its Desired Forced Sharing Arrangement Because Surescripts Has Not Previously Engaged In The Type Of Network Sharing With Rivals That The FTC Envisions**

The FTC's request "to open the market to potential competitors[,]" ECF No. 170 at 4 (citing *Mass. v. Microsoft Corp.*, 373 F.3d 1199, 1215–18, (D.C. Cir. 2004)),[5] is exactly the type of price-regulated forced sharing that courts hold to be improper remedies in antitrust cases.

---

[5] The FTC's citation to *Microsoft* is unavailing.  That case did not involve a defendant that ceased and abandoned its purportedly wrongful conduct, which Surescripts is committing to do. Moreover, *Microsoft* in pertinent part concerned an injunction requiring the defendant to disclose certain application programming interfaces ("APIs") to "facilitate" the foreclosed rivals' interoperability with the defendant's operating system.  *Id.* at 1216.  In short, it addressed a distinct

What the FTC presumably envisions with this desired relief is a world where Surescripts is compelled to provide access to its platform and where the Court would oversee that outcome on an ongoing basis.  This theorized remedial scheme would involve this Court "act[ing] as [a] central planner[]" in "identifying the proper price, quantity, and other terms of dealing" between Surescripts and third parties purportedly foreclosed by the alleged conduct—"a role for which [courts] are ill suited."  *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407–08 (2004); *see also Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1073 (10th Cir. 2013) ("If forced sharing were the order of the day, courts would have to pick and choose the applicable terms and conditions.  That would [] risk judicial complicity in collusion and dampened price competition.").

But even if it was proper and advisable for courts to assume the burden of such market engineering remedial schemes, it is black letter law that forcing a defendant to share its resources with or otherwise lessen competition with its competitors is an improper remedy in almost every instance.  *See* Herbert Hovenkamp & Phillip E. Areeda, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 772. (Fourth & Fifth Editions 2018-2022) ("There is no duty to sell something that the firm is using only internally or to share some facility that the firm is using for its own internal production but is not in the business of sharing with others.").  As the Supreme Court explained:

> We think that Professor Areeda got it exactly right: "No court should impose a duty to deal that it cannot explain or adequately and reasonably supervise. The problem should be deemed irremedia[ble] by antitrust law when compulsory access requires the court to assume the day-to-day controls characteristic of a regulatory agency." [Phillip Areeda, *Essential Facilities: An Epithet in Need of*

---

technological issue, following a finding of liability.  Here, however, as both First Databank and Emdeon demonstrate, competing routing and eligibility providers need no technological connectivity equivalent to APIs to enter.

13

> *Limiting Principles*, 58 Antitrust L.J. 841, 853 (1989).] In this case,
> respondent has requested an equitable decree to "[p]reliminarily and
> permanently enjoi[n] [Verizon] from providing access to the local
> loop market … to [rivals] on terms and conditions that are not as
> favorable" as those that Verizon enjoys.  App. 49–50.  An antitrust
> court is unlikely to be an effective day-to-day enforcer of these
> detailed sharing obligations.

*Trinko*, 540 U.S. at 415.  The narrow and limited circumstance when this sort of forced sharing

may be permitted is limited to instances when the defendant has previously "engaged in [the

proposed] course of dealing with its rivals, or [that it] would ever have done so absent []

compulsion."  *Id*. at 409.

    A bevy of cases shows that this sort of forced sharing would be improper here, where

Surescripts is not currently in a joint venture or similar arrangement to share its network with

rivals.  In *Covad Communications Co. v. Bell Atlantic Corporation*, for example, the D.C. Circuit

affirmed the district court's decision to not impose forced sharing because there were no

allegations that the defendant had previously been involved in the contemplated arrangement or

that it had an interest in being involved in it.  398 F.3d 666, 672–73 (D.C. Cir. 2005).  Similarly,

the Tenth's Circuit's decision in *Four Corners Nephrology Associates, P.C. v. Mercy Medical

Center of Durango*, rejected a request for forced sharing, concluding that the "key fact" of a pre-

existing profitable relationship was missing.  582 F.3d 1216, 1225 (10th Cir. 2009).  In fact, the

defendant merely refused to share its facilities because starting such an arrangement would be

unprofitable.  *Id*.

    The FTC is simply not entitled to any relief that amounts to price-regulated forced sharing,

even if this case proceeds.  As the Supreme Court has explained, there is no viable claim for relief

when a plaintiff is proposing a scheme where the defendant has not previously "engaged in [the

proposed] course of dealing with its rivals, or [that it] would ever have done so absent []

compulsion."  *Trinko*, 540 U.S. at 409.  Therefore, even if the FTC had properly requested a

remedy to force Surescripts to share with its rivals—and it has not—it could not properly achieve such relief even if it prevailed at trial.

> ### 2. The FTC Limited Its Claims To Routing And Eligibility, and Its Theorized Remedies Related To Other Products Rest On Speculative Contingencies

The FTC also suggests that it may wish to seek injunctive relief concerning other contractual provisions beyond Surescripts' now defunct loyalty programs, and with respect to products beyond routing or eligibility. ECF No. 170 at 4. Neither other products nor "other types of contractual terms" are at issue in this case and have never been.

Courts have been leery of a plaintiff's attempt to expand their claims late in a case in an attempt to avoid mootness. As the D.C. Circuit has held, "where plaintiffs are resisting a mootness claim we think they must be estopped to assert a broader notion of their injury than the one on which they originally sought relief." *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (citing *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1449–50 & n.28 (11th Cir. 1987) (holding that the scope of a plaintiff's alleged injury is found in the complaint)). The same is true here, for the FTC's attempt to avoid mootness by pointing to new injuries from conduct that—by its own admission in its Complaint—ended years ago and injuries for products that at issue in the case.[6]

---

[6] The FTC's complaint mentions two contractual relationships: with Relay Health and with Allscripts. The first alleges "non-compete provisions in [Surescripts'] contracts with RelayHealth." Compl., ECF No. 1, ¶ 224. But the complaint itself acknowledges that this provision was removed in 2015 and was not express as to routing. *Id.* ¶ 5 ("the formal non-compete is no longer in the agreement"); *id.* ¶ 151 (acknowledging there was no "explicit routing non-compete"). The FTC's complaint also characterizes Surescripts' contract with Allscripts as "an especially restrictive agreement for eligibility," *id.* ¶ 229, that "prevent[ed Allscripts] from renewing contracts with competitors," ECF No. 104 at 4; *see also* Compl., ECF No. 1, ¶ 112. But even in their complaint, the FTC acknowledges that was an isolated provision in a contract from 2010, is no longer operative, and has not appeared in a Surescripts contract since. Compl., ECF

Beyond that, the FTC's proposals involve "speculative contingencies," which the Supreme Court has held can "afford no basis for our passing on the substantive issues." *Hall v. Beals*, 396 U.S. 45, 49 (1969); *Golden v. Zwickler*, 394 U.S. 103, 109 (1969) (holding there must be "evidence that this is a prospect of immediacy and reality"). For instance, in *Board of License Commissioners of Town of Tiverton v. Pastore*, the plaintiff had gone out of business and could not get the liquor license it sought in the case. 469 U.S. 238, 240 (1985). The plaintiff continued to argue that there were additional "circumstances under which a decision on the merits by th[e] Court might conceivably affect substantive rights." *Id.* at 239–40. But the Court dismissed the writ of certiorari as moot because these arguments were merely speculative contingencies. *Id.* at 240.

The Courts of Appeals have similarly applied this concept. For instance, in *Mayfield v. Dalton*, 109 F.3d 1423 (9th Cir. 1997), two servicemen who sought to challenge a military policy had been honorably separated from active duty before the court decided their appeal. They argued that their claims were not moot because they could "still . . . be required to return to active duty in an emergency situation." *Id.* at 1425. The court held that, because "the recall could happen only at some indefinite time in the future and then only upon the occurrence of future events now unforeseeable[,]" the claims were moot. *Id.*

The same concept applies here. The FTC's theorizing about loyalty provisions in other contracts (which are not present) and vague references to the potential of long-ago conduct to return amounts to nothing more than speculating about potential contingencies. That is not sufficient to overcome mootness. The FTC is thus not entitled to an injunction preventing conduct that it has not sought to redress in its complaint, and that is not presently occurring.

---

No. 1, ¶¶ 110–11; *see also* Surescripts Statement of Undisputed Material Facts, ECF No. 162-2, ¶ 27.

## IV.   POTENTIAL SETTLEMENT CONFERENCE

Finally, to the extent that this Court may have any uncertainty as to whether this case is moot, Surescripts respectfully submits that Court-ordered mediation may be appropriate at this stage—as discussed at the March 16, 2023 oral argument.

Dated:  March 17, 2023

Respectfully submitted,

_/s/ Amanda P. Reeves_
Amanda P. Reeves (D.C. Bar 496338)
Allyson M. Maltas (D.C. Bar 494566)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2183
Facsimile: (202) 637-2201
Email: amanda.reeves@lw.com
Email: allyson.maltas@lw.com

Alfred C. Pfeiffer, Jr. (_appearing pro hac vice_)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: al.pfeiffer@lw.com

_Attorneys for Defendant Surescripts, LLC_

17