# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION** <br> 600 Pennsylvania Avenue, N.W. <br> Washington, DC 20580 <br><br> Plaintiff, <br><br> v. <br><br> **SURESCRIPTS, LLC** <br> 2550 South Clark Street, 10th Floor <br> Arlington, VA 22202 <br><br> Defendant. | Case No. 1:19-cv-01080 <br><br> **STIPULATED ORDER FOR PERMANENT INJUNCTION AND EQUITABLE RELIEF** |

Plaintiff Federal Trade Commission ("FTC") filed its Complaint for Injunctive and Other Equitable Relief ("Complaint") in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §53(b) to remedy and prevent Defendant Surescripts, LLC's alleged anticompetitive conduct and unfair methods of competition in or affecting commerce in violation of Section 5 of the FTC Act 15 U.S.C. § 45(a). The FTC and Defendant Surescripts, LLC ("Surescripts") stipulate to the entry of this Stipulated Order for Permanent Injunction and Equitable Relief ("Order") to resolve all claims in this action between them. Further, as part of the settlement of this matter, Surescripts agrees to comply with this Order pending its entry or rejection by the Court.

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Surescripts engaged in anticompetitive conduct and unfair methods of competition in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

3. Surescripts neither admits nor denies any of the allegations in the Complaint. Only for purposes of this action, Surescripts admits the facts necessary to establish subject matter and personal jurisdiction and venue.

4. Surescripts waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to its own costs and attorney fees.

5. Surescripts waives all rights to appeal or otherwise challenge or contest the validity of this Order.

**ORDER**

**I.    DEFINITIONS**

**IT IS HEREBY ORDERED that** as used in this Order the following definitions apply:

A. "Surescripts" means Surescripts, LLC, its directors, officers, employees, agents, representatives, successors, and assigns; and the joint ventures, subsidiaries, partnerships, divisions, groups, and affiliates controlled by Surescripts, LLC, and the respective directors, officers, employees, agents, representatives, successors, and assigns of each.

B. "Affirmative Steps" means the following actions by Surescripts with respect to E-Prescribing Services:

1. Within 10 days of the date of the entry of this Order, provide notice of this Order, a description of the contractual provisions this Order prohibits Surescripts from enforcing, and a description of Surescripts' volume based pricing going forward (where applicable) pursuant to Paragraph II.G, by delivering a letter in the form of Exhibit A to each Customer;

2. At the request of the Customer, allow each Customer to immediately enter into a new contract on the same terms except those prohibited by this Order;

3. Remove provisions prohibited by this Order when Surescripts and the Customer next engage in renegotiation or renewal of a contract containing such prohibited provisions;

4. If a contract containing provisions prohibited by this Order would otherwise automatically renew on existing terms without renegotiation, then, in advance of the first date the contract is set to automatically renew, send a new proposed contract to the Customer omitting the prohibited provisions;

5. Within 10 days of the date of the entry of this Order, publish a notice on Surescripts' website describing the provisions this Order prohibits Surescripts from enforcing; and

6. Include specific instructions on not enforcing the provisions prohibited by this Order as part of Surescripts' Compliance Program, with annual reminders to Surescripts' in-house legal department that such provisions cannot be enforced and cannot be included in future contracts.

C. "All-Unit Discount or Incentive" means a Price Advantage that is provided to a Customer *on every unit* based upon the Customer's volume of E-Prescribing Services reaching a

specified threshold (in units, revenues, share, or any other measure). By way of example, a discount of X% on all volume if the volume transmitted exceeds Y volume (including on the volume transmitted up to and including Y) is an All-Unit Discount or Incentive, while a discount of X% on all volume transmitted that is in excess of Y (but not on the volume transmitted up to and including Y) is a Last-Unit Discount or Incentive.

D. "Antitrust Compliance Officer" means the person appointed or retained to supervise Surescripts' antitrust compliance program described in Section V of this Order.

E. "Antitrust Laws" means the Federal Trade Commission Act, as amended, 15 U.S.C. § 41 et seq., the Sherman Act, 15 U.S.C. § 1 et seq., and the Clayton Act, 15 U.S.C. § 12 et seq.

F. "Commission" means the Federal Trade Commission.

G. "Competitor" means any Person, other than Surescripts, that intends to engage in or is currently engaged in the business of developing or providing its own E-Prescribing Services, and any such Person's employees, agents, and representatives. A Competitor includes any Person entering into a direct connection between an EHR and a pharmacy or PBM to transact its own E-Prescribing Services (e.g., Routing, Eligibility, etc.).

H. "Customer" means a pharmacy, PTV, pharmacy aggregator, value added reseller, PBM, EHR, prescriber aggregator, or any other corporation, partnership, unincorporated entity, or government agency that contracts directly with Surescripts for E-Prescribing Services (presently or in the future).

I. "Customer's Total Transactions" means a Customer's total E-Prescribing Services transactions from Surescripts and all Competitors.

J. "EHR" means an electronic health records vendor.

K. "Eligibility" means a series of transactions that allows a network participant to match a patient to their pharmacy benefit.

L. "E-Prescribing Services" means Routing, Eligibility, Formulary, On Demand Formulary, and Medication History, as well as any service that, after the effective date of this Order, replaces or is comparable to such services.

M. "Executive, Legal, Sales, and Marketing Staff" means Surescripts' Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer (or their equivalent positions regardless of job title); Surescripts' in-house legal counsel; Surescripts' General Managers and Vice Presidents (or their equivalent positions regardless of job title) whose duties relate to the marketing, promotion, contracting or sale of E-Prescribing Services; and employees whose duties relate primarily to the marketing, promotion, contracting or sale of E-Prescribing Services.

N. "Forecasted Transactions" means Surescripts' good faith expectation, at the time a Customer contract is executed, amended, or renewed, of a Customer's Total

    Transactions, based on information reasonably available to Surescripts, including a Customer's historical transaction purchase volumes or any other information provided by the Customer to Surescripts.

O. "Formulary" means the provision of data that identifies the patient's group or plan level prescription benefit information for the selected drug or any alternative drugs, as applicable.

P. "Last-Unit Discount or Incentive" means a Price Advantage that is provided to a Customer based upon the Customer's volume of E-Prescribing Services reaching a specified threshold (in units, revenues, share, or any other measure) that *applies only above the threshold necessary* to qualify for the Price Advantage. By way of example, a discount of X% on all volume transmitted if the volume exceeds Y volume (including on the volume transmitted up to and including Y) is an All-Unit Discount or Incentive, while a discount of X% on all volume transmitted that is in excess of Y (but not on the volume up to and including Y) is a Last-Unit Discount or Incentive.

Q. "Majority Share Requirement" means an absolute or conditional requirement, whether formal or informal, with respect to E-Prescribing Services, that a Customer, over the time period of the relevant requirement:

    1. Use the Surescripts network for more than 50% of the Customer's Total Transactions, whether in volume or dollars;

    2. Use the Surescripts network for a minimum volume of transactions if that minimum is more than 50% of applicable Forecasted Transactions for the Customer.

R. "Medication History" means the provision of dispensed medication history data from PBMs and pharmacies and includes the following transactions: Medication History for Ambulatory, Medication History for Ambulatory Premium Suite, Medication History for Populations, Medication History for Populations – Notifications, Medication History for Reconciliation (including Long-Term and Post-Acute Care Medication History for Reconciliation), and Medication History for States of Emergency.

S. "On-Demand Formulary" means the provision of data that identifies the patient's group or plan level prescription benefit information for the selected drug or any alternative drugs, as applicable, provided in real time.

T. "Order" means this Order entered in this action.

U. "Person" includes Surescripts and means both natural persons and artificial persons, including corporations, partnerships, unincorporated entities, or governments. For the purpose of this Order, any corporation includes the subsidiaries, divisions, groups, and affiliates controlled by it.

V. "PBM" means a pharmacy benefit manager.

4

W. "Price Advantage" means a payment, discount, discounted price, or rebate.

X. "PTV" means pharmacy technology vendor.

Y. "Routing" means the transmission of prescription and prescription-related information between a prescriber and a pharmacy via the prescriber's EHR system and includes the following transactions: NewRx, Electronic Prescribing of Controlled Substances, RxRenewal Request, RxChange, CancelRx, NewRxRequest, RxTransfer, RxFill, and Long-Term and Post-Acute Care routing transactions.

## II. PROHIBITION ON MAJORITY SHARE AND RELATED REQUIREMENTS

**IT IS FURTHER ORDERED** that, acting directly or indirectly, or through any corporate or other device, in or affecting commerce, as "commerce" is defined in Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44, Surescripts, in connection with the sale of E-Prescribing Services, is restrained and enjoined from:

A. Entering into, maintaining, or enforcing a contract, agreement, or understanding that imposes upon a Customer or commits a Customer to a Majority Share Requirement, including by:

   1. Conditioning the sale of E-Prescribing Services on a Majority Share Requirement for such services;

   2. Conditioning a Price Advantage for E-Prescribing Services on a Majority Share Requirement for such services; or

   3. Conditioning a flat or lump sum payment or monies (or any other item of pecuniary value) on a Majority Share Requirement for E-Prescribing Services.

   *Provided*, that the prohibition in Paragraph II.A does not apply to Last-Unit Discounts or Incentives.

B. Entering into, maintaining, or enforcing a contract, agreement, or understanding whereby Customers using Surescripts' E-Prescribing Services: (i) must promote or market Surescripts' E-Prescribing Services; or (ii) are prohibited from promoting or marketing E-Prescribing Services that are not Surescripts' E-Prescribing Services.

C. Entering into, maintaining, or enforcing a contract, agreement, or understanding that:

   1. Prevents or limits Customers from communicating with a third party regarding the provision of E-Prescribing Services (including a Competitor) without first setting up meetings between the Customer, Surescripts, and the third party; or

   2. Requires Customers to provide Surescripts a right of first refusal to provide E-Prescribing Services.

D.  Entering into, maintaining, or enforcing a contract, agreement, or understanding prohibiting Customers from entering, renewing, extending, or re-entering agreements for E-Prescribing Services that are not Surescripts' E-Prescribing Services.

E.  Entering into, maintaining, or enforcing non-compete provisions with a Competitor regarding that Competitor's provision of its own E-Prescribing Services to third parties; or limit the Competitor's ability to enter into or maintain contracts and connections (including direct connections) for the provision of its own E-Prescribing Services by the Competitor.

F.  Threatening to, or taking any action to terminate, suspend, or delay the provision of an E-Prescribing Service, or withdraw or modify a Price Advantage for an E-Prescribing Service for the reason, in whole or meaningful part, that (i) the Customer does not agree to a Majority Share Requirement that violates this Order, (ii) the Customer does not acquiesce in Surescripts achieving, continuing, or maintaining a Majority Share Requirement that violates this Order; or (iii) Surescripts is seeking to retaliate against the Customer because the Customer is purchasing or is considering purchasing E-Prescribing Services from a Competitor.

G.  Charging a Customer with an All-Unit Discount or Incentive tied to transaction volume tiers more than the average per-transaction price that Customer paid to Surescripts in the 12 months prior to entry of this Order for the pendency of the term of the contract including such All-Unit Discount or Incentive. During the pendency of the term of that contract, should the Customer's transaction volume with Surescripts increase following entry of this Order such that the Customer qualifies for a lower price based on the contract transaction volume tiers, Surescripts shall charge the lower price. If, however, the Customer's volume decreases following entry of this Order such that the Customer falls into a higher pricing tier, Surescripts shall not increase the Customer's price and the Customer's price shall be the average per-transaction price that Customer paid in the 12 months prior to entry of this Order. Surescripts shall follow Affirmative Steps to renegotiate each such contract to remove the All-Unit Discount or Incentive.

### III.   AFFIRMATIVE STEPS

**IT IS FURTHER ORDERED** that Surescripts:

A.  shall take Affirmative Steps to remove, modify, terminate or change provisions that violate Section II of this Order from all contracts, agreements, and understandings with its Customers; and

B.  shall encourage its Customers and partners that resell Surescripts' E-Prescribing Services to remove provisions that do not conform to Section II of this Order from contracts between the Customer or partner and a third party.

> **PROVIDED, HOWEVER,** that if Surescripts is taking or has taken all of the Affirmative Steps to remove, modify, terminate, or change the provisions of a contract

that violate Paragraphs II.A-F, Surescripts shall not be deemed to be "maintaining" such provisions prohibited in Paragraphs II.A-F.

## IV.   SURESCRIPTS EMPLOYEE NON-COMPETE AGREEMENTS

**IT IS FURTHER ORDERED** that:

A. Surescripts shall not enter into or enforce any contract, agreement, provision, or understanding that restricts or restrains the right or ability of any former or current employee (whether employed directly or indirectly or through any corporation, company, business, partnership, subsidiary, division, or agent) to seek or accept employment with any Competitor or entrant in E-Prescribing Services for any period of time after the conclusion of the employee's employment with Surescripts.

B. No later than 10 days after the date of the entry of this Order, Surescripts shall provide notice of the prohibitions contained in Paragraph IV.A to any current or former employee (whether employed directly or indirectly or through any corporation, company, business, partnership, subsidiary, division, or agent) that is bound by a contract, agreement, provision, or understanding described in Paragraph IV.A. Surescripts shall be deemed to have provided notice to a former employee by sending such notice to the former employee's last known email address or last known mailing address.

## V.   ANTITRUST COMPLIANCE PROGRAM

**IT IS FURTHER ORDERED** that:

A. Surescripts shall design, maintain, and operate an antitrust compliance program to ensure compliance with this Order and the Antitrust Laws, and as part of such program shall:

   1. No later than 30 days from the date this Order is issued, appoint or retain an Antitrust Compliance Officer to supervise Surescripts' antitrust compliance program (Surescripts may replace the Antitrust Compliance Officer with another person at any time);

   2. Upon issuance of this Order, provide in-person or online training concerning Surescripts' obligations under Sections II-IV of this Order and an overview of the Antitrust Laws as they apply to Surescripts' activities to Surescripts' Executive, Legal, Sales, and Marketing Staff:
      a. No later than 30 days after this Order is issued;

      b. No later than 30 days after an employee first becomes Executive, Legal, Sales, and Marketing Staff; and

      c. At least annually.

   3. Maintain policies and procedures for:

      a. Executive, Legal, Sales, and Marketing Staff to ask questions about, and report violations of, this Order and the Antitrust Laws confidentially and without fear of retaliation of any kind;

      b. Disciplining Executive, Legal, Sales, and Marketing Staff for failure to comply with this Order and the Antitrust Laws; and

      c. The retention of documents and records sufficient to record Surescripts' compliance with its obligations under Section V, including for two years records showing that Executive, Legal, Sales, and Marketing Staff have received all trainings required under this Order.

B. Surescripts shall:

  1. Within 10 days of the date of the entry of this Order, publish this Order on Surescripts' website; and

  2. Provide a copy of the Order at the outset of negotiations of any contract, amendment, or renewal of E-Prescribing Services.

## VI. COMPLIANCE REPORTING REQUIREMENTS

**IT IS FURTHER ORDERED** that Surescripts shall file verified written reports ("Compliance Reports") in accordance with the following:

A. Surescripts shall submit:

  1. Interim Compliance Reports within 30 days of the date of the entry of this Order and six months after the date of the entry of this Order;

  2. Annual Compliance Reports one year after the date of the entry of this Order and annually for the next nineteen years on the anniversary of that date; and

  3. Additional Compliance Reports as the Commission or its staff may request.

B. Each Compliance Report shall contain sufficient information and documentation to enable the Commission to determine independently whether Surescripts is in compliance with the Order. Conclusory statements that Surescripts has complied with its obligations under the Order are insufficient. Surescripts shall include in its reports, among other information or documentation that may be necessary to demonstrate compliance:

  1. The name, title, business address, email address, and business telephone number of the Antitrust Compliance Officer;

  2. A full description of the measures Surescripts has implemented or plans to implement to ensure that it has complied, is complying, and will comply with each section of this Order;

3. A copy of the form(s) of notice provided to employees to comply with Paragraph IV.B, and a description of how and to whom such notice was provided;

4. Unless identified in an earlier compliance report, the identity of all parties who received the notice required by Section III of this Order, together with proof of service of the notice;

5. For each E-Prescribing Service, copies of Surescripts' contracts with the 10 largest customers (by transaction volume) on each side of each service (e.g. for routing, contracts for the 10 largest EHRs and 10 largest pharmacies/PTVs; for eligibility, contracts for the 10 largest EHRs and 10 largest PBMs), along with a random sample of 10 contracts from the remaining customers on each side of each service. Unless previously identified in an earlier compliance report, Surescripts will identify in the provided contracts the provisions no longer being enforced in accordance with the Order. In addition, Surescripts will provide a list of all the contracts (other than the contracts provided) that contain provisions that Surescripts is no longer enforcing, and describe its efforts to enter revised contracts that do not contain provisions prohibited by the Order; and

6. Unless identified in an earlier compliance report, the name and description of any E-Prescribing Service transaction that replaces or is comparable to any of the transactions currently used to perform an E-Prescribing Service. If the service is replacing an existing service, identify which existing service the new service is replacing.

7. For a period of 5 years after filing a Compliance Report, Surescripts shall retain all material written communications with each party identified in each Compliance Report and all non-privileged internal memoranda, reports, and recommendations concerning fulfilling Surescripts' obligations under this Order during the period covered by such Compliance Report.  Surescripts shall provide copies of these documents to Commission staff upon request.

8. Surescripts shall have each compliance report verified under penalty of perjury in the manner set forth in 28 U.S.C. § 1746 by the Chief Executive Officer or another officer or employee specifically authorized to perform this function. If the compliance report is verified by someone other than the Chief Executive Officer, Surescripts shall include documentation in the compliance report establishing that the verifier is authorized to verify the compliance report on Surescripts' behalf. Surescripts shall file its compliance reports with the Secretary of the Commission at ElectronicFilings@ftc.gov and the Compliance Division at bccompliance@ftc.gov, as required by Commission Rule 2.41(a), 16 C.F.R. § 2.41(a).

## VII.   CHANGE IN SURESCRIPTS

**IT IS FURTHER ORDERED** that Surescripts shall notify the Commission at least 30 days prior to:

    A. The dissolution of Surescripts, LLC;
    B. The acquisition, merger, or consolidation of Surescripts, LLC; or
    C. Any other change in Surescripts, including assignment and the creation, sale, or dissolution of subsidiaries, if such change might affect compliance obligations arising out of this Order.

## VIII.   ACCESS TO INFORMATION

**IT IS FURTHER ORDERED** that, for the purpose of determining or securing compliance with this Order, and subject to any legally recognized privilege, and upon written request and upon 5 days' notice to Surescripts, Surescripts shall, without restraint or interference, permit any duly authorized representative of the Commission:

    A. Access, during Surescripts' business office hours and in the presence of counsel, to all facilities and access to inspect and copy all books, ledgers, accounts, correspondence, memoranda and all other records and documents in the possession, or under the control, of Surescripts related to compliance with this Order, which copying services shall be provided by Surescripts at its expense; and

    B. To interview directors, officers, or employees of Surescripts, who may have counsel present, regarding such matters.

## IX.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

## X.   EXPIRATION OF ORDER

**IT IS FURTHER ORDERED** that this Order shall terminate 20 years from the date it is issued.

## XI.   DISMISSAL AND COSTS

This action is hereby dismissed with prejudice as to Surescripts. Each party to bear its own costs.

SO ORDERED this _____ day of _____, 2023.

_____
The Honorable John D. Bates
United States District Judge

# Exhibit A



VIA ELECTRONIC MAIL

TO: [Customer]
ATTN: [Customer Contact]
FROM: Surescripts, LLC
DATE: [TBD]
RE: Surescripts' Settlement of FTC Litigation

Dear [Customer Contact]:

     Surescripts is required to send you this notice by the Stipulated Order for Permanent Injunction and Equitable Relief ("Order") in *FTC v. Surescripts, LLC*, No. 19-cv-01080 (D.D.C.).  The Order reflects a settlement without litigation between the FTC and Surescripts and does not constitute an admission by Surescripts that it has violated the law or that any of the facts alleged by the FTC regarding Surescripts' conduct are true.  The terms of the settlement are included in the attached Order.  You also may read and download a copy of the Order from the FTC's website at [web link to case on FTC website].  Certain of the terms of the Order affect the contractual provisions that Surescripts is permitted to enter into and enforce in its customer contracts and may affect your current contract(s) with Surescripts.  Surescripts' obligations to its customers under the Order are set out in Sections II and III of the Order.  Capitalized terms used in the Order are defined in Section I of the Order.  All capitalized terms in this letter refer to terms defined in the Order.  **Please read the Order carefully.  If anything in this letter conflicts with the terms in the Order, the terms in the Order apply.**

     Generally, the Order prohibits Surescripts from requiring you to purchase from Surescripts greater than 50% of your total transaction volume, or a minimum volume of transactions that is equivalent to more than 50% of your total transaction volume.  For the term of the Order, this prohibition applies to your existing agreements with Surescripts and to any new agreements you enter into with Surescripts.

     Surescripts is prohibited from entering into, maintaining, or enforcing any of the following:

1. Any requirement that a Customer using Surescripts' E-Prescribing Services (a) promote or market Surescripts' E-Prescribing Services, or (b) refrain from marketing or promoting a third party's E-Prescribing Services;

2. Any requirement that (a) prevents or limits a Customer from communicating with a third party (including a Competitor) about E-Prescribing Services without first setting up meetings between the Customer, Surescripts, and the third party; or (b) requires a

2550 South Clark St., 10th Floor
Arlington, VA 22202
T: 703.921.2121   F: 703.921.2191

www.surescripts.com

920 2nd Avenue South
Minneapolis, MN  55402
T: 866.267.9482   F: 651.855.3001

      Customer to provide Surescripts a right of first refusal to provide E-Prescribing Services.

3. Any restriction on a Customer entering into, renewing, extending, or re-entering agreements for E-Prescribing Services that are not Surescripts' E-Prescribing Services.

4. Any provisions limiting a Competitor's provision of its own E-Prescribing Services to third parties or limiting a Competitor's ability to enter into or maintain contracts and connections (including direct connections) for the provision of its own E-Prescribing Services.

      Moreover, the Order restricts All-Unit Discounts and Incentives.[1]  If you currently have an All-Unit Discount or Incentive tied to transaction volume tiers, Surescripts cannot charge you more than the average per-transaction price that you paid to Surescripts in the 12 months prior to entry of the Order for the pendency of the term of that contract.  If your transaction volume with Surescripts increases following entry of the Order such that you qualify for a lower price based on the contract transaction volume tiers, Surescripts will charge the lower price.  If, however, your volume decreases following entry of the Order such that you fall into a higher pricing tier, Surescripts will not increase your price and your price will be the average per-transaction price you paid in the 12 months prior to entry of the Order.

      If you have any concerns in the future about whether Surescripts is complying with its obligations under the Order, you may contact us, the FTC, or both.  You may contact Surescripts through the [sales] staff with whom you do business or contact our corporate offices directly by phoning or emailing [name] at [phone number and email address].  You may contact the FTC by phoning or emailing [name] at [phone number and email address].

*Sincerely,*

/s/_____

Name: /ssname1/

Title: /sstitle1/

---

[1] Surescripts may, however, offer last-unit volume or last-unit percentage discounts and incentives, as defined in the Order.